## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTONIO TYSON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  08-4445** |
| **ROBERT C. TANNER-WARDEN, JEFFREY TRAVIS-EX WARDEN, JAMES LEBLANC-SECRETARY, RICHARD STALDER-EX SECRETARY, TIM CRAWFORD-MAJOR, WADE RIGDON-CAPTAIN** | **SECTION  "I"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **"Motion for Review Under 42 U.S.C. § 1915A" (Rec. Doc. No. 34)** filed by the Defendants, Warden Robert Tanner, Chief Jeffery Travis, Major Tim Crawford, and Captain Wade Rigdon, requesting the Court to conduct a screening of the Plaintiff's claims for frivolousness.  The motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b) and (c), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e (c)(1) and(2).  The Court held a hearing pursuant to *Spears v. McCotter*[1] on November 3, 2008, with the plaintiff, Antonio Tyson participating by

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  *Spears*, 766 F.2d at 180.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).  The cassette tape of the hearing is being placed in the custody of the Court Recording Unit along with a copy of this report.

telephone.[2]   Upon review of the record, the Court has determined that the pending motion can be disposed of without an evidentiary hearing.

I.    **Factual and Procedural Background**

      A.    **The Complaint and Amended Complaint**

The Plaintiff, Antonio Tyson ("Tyson"), is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[3]  He filed the captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner ("Tanner"), former Warden Jeffrey Travis ("Travis"), Major Tim Crawford ("Crawford"), Captain Wade Rigdon ("Rigdon"), Louisiana Department of Corrections Secretary James LeBlanc ("LeBlanc"), and former Secretary Richard Stalder ("Stalder"), alleging due process and equal protections violations under the Fourth and Fourteenth Amendment of the U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.

Tyson alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of a violating a prison regulation prohibiting him from the unauthorized possession of his medication, catapress.  After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10  days in an isolation cell with a loss of 60 days of good-time credits.  He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford.  After the incident, on December 6, 2007, he was sentenced to 20 days in an isolation cell.  Captain Rigdon

---

[2]Rec. Doc. No. 14.

[3]Rec. Doc. No. 1.

also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six

months.  In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days

in an isolation cell, with non-contact visitation and restitution for drug testing for another six months

imposed by Captain Rigdon.  The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson argues that the restitution and non-contact visitation are not authorized punishments

under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug tests.[4]  He

---

[4]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.

D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.

E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.

F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.

G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.

H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.

I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary measures upon an offender as a result of his actions.

also alleges that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials.  He also claims that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

As relief, Tyson seeks judgment declaring that RCC's policy of requiring restitution for negative drug testing and non-contact visitation as additional disciplinary sentences violates Louisiana law and the Due Process clause.  He also seeks declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses.  He seeks to enjoin RCC and DOC from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws.  He also requests that he be awarded $5000.00 in compensatory damages, the return of money paid in restitution, $10,000.00 in punitive damages, costs, appointment of counsel, and certification of a class.

Contemporaneous with the filing of the complaint, Tyson submitted an Amended Complaint in which added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr., as a defendant.  He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[5] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of the prison officials wrongful action where prison officials fail to provide the inmate with notice of his administrative appeal rights.  He also claims that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

---

[5]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

B.      **The *Spears* Hearing**

Tyson testified that he has been incarcerated for 17 years.  Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress, the medicine he is prescribed to take for high blood pressure.  He indicated that, on each occasion, he was taken before the disciplinary board and given a sentence in isolation and/or a loss of good-time credits.

He complains further that, in addition to the sentence imposed by the disciplinary board, the prison officials also imposed a separate policy which caused him to lose his contact visits and required him to pay $10.00 a month for urine tests.  He states that this policy violates Louisiana law and did not apply to him.  He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test.  He claims that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied.  He also indicated that he filed suit in East Baton Rouge Parish, as required by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation.  This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs.  He indicated that the guards would pass out the medication three times a day but that they do not watch him take it.  Sometimes, he would not take the medication right away.  He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365.  He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge, and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as warden.  He conceded that he was not aware whether Tanner or Travis had personal knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as Defendants because, as DOC secretaries, the are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as Defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

After further review of the Complaint, the Amended Complaint, and the testimony from the hearing, on December 10, 2008, the Court ordered the issuance of summons upon Warden Tanner, Warden Travis, Major Crawford, and Captain Rigdon.  The Court did not order the issuance of summons as to Secretary Stalder, Secretary LeBlanc, or the State of Louisiana, through Attorney General Foti, pending further review of the case.

Defendants, Travis, Tanner, Crawford, and Rigdon, were served with summons and a copy of the complaint on December 29 and 30, 2008.  The Defendants have not filed an answer or responsive pleading.

## II.   __Defendants' "Motions for Review Under 42 U.S.C. § 1915A"__

Counsel for the Defendants has filed a procedurally unrecognizable "Motion for Review Under 42 U.S.C. § 1915A," (Rec. Doc. No. 34), a statutory provision which does not exist, requesting that the Court conduct a review for frivolousness as set forth in 28 U.S.C. § 1915A and to provide defense counsel with "a written identification of cognizable claims."[6]

Tyson filed an opposition to the motion, arguing that the Defendants should be estopped from seeking a review under 28 U.S.C. § 1915 where the record is clear that the Magistrate Judge has already determined that valid claims exist, as demonstrated by the decision to serve the summons.  He further argues that his Complaint states a cognizable claim against the Defendants under federal and state law.

Within the motion, the Defendants move the Court to review Tyson's prisoner Complaint under 28 U.S.C. § 1915A.[7] The referenced statutory provision by its very terms authorizes the Court to *sua sponte* dismiss a case filed by a prisoner proceeding *in forma pauperis* upon a determination that the case is frivolous or malicious, the case fails to state a claim for which relief can be granted, or the case seeks monetary relief against an immune defendant.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).  The statute does NOT provide a basis for counsel to urge a motion.

---

[6]Rec. Doc. No. 34-2, p. 5.

[7]28 U.S.C. § 1915A provides in relevant part as follows:
a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.  . . .

In other words, counsel for the Defendants has urged a motion under a statutory provision which does not provide authority for the filing of such a motion. Section 1915A is clearly and exclusively a directive to the Courts for *sua sponte* action upon the Court's preliminary review of *in forma pauperis* cases. *See Fiorentino v. Biershbach*, 64 Fed. Appx. 550, 553 (7th Cir. 2003) (district courts are to employ §1915A's screening mechanism to all *in forma pauperis* prisoner suits); *Onapolis v. Lamanna*, 70 F. Supp.2d 809 (N.D. Ohio 1999) (same).

This Court is required to and does as a routine matter screen the cases at the time of filing, and again after a *Spears* Hearing, pursuant to the statutory directives in 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e. Upon finding that a complaint or claim should be dismissed, the Court issues the appropriate report or partial report and recommendation in due course. When *sua sponte* dismissal is not warranted, there is no report to issue.

Having found during the prior screenings of Tyson's case, both before and after the *Spears* Hearing, the Court determined that the Plaintiff's Complaint contains a statement of some non-frivolous claims against the Defendants for which relief may be granted. The Court ordered service and allowed the case to proceed. In spite of this, there has been no answer or responsive pleading from the served Defendants, which is nonetheless permissible under the waiver provision in 42 U.S.C. § 1997e.

Rather than file an answer or proper responsive pleading, counsel for Defendants filed the instant motion. Counsel's impatience, however, in awaiting a recommendation on matters which can be dismissed pretrial does not prevent the served Defendants from answering or responding to the Complaint in an appropriate manner, as the motion suggests. The screening process under § 1915A is not for counsel's benefit but for that of the District Court, and it is mandated to be done

"as soon as practicable."  The practicality or timing of the issuance of a report on the frivolousness of a complaint or claim therein is determined by the Court's docket not counsel's impatience or impertinence.  If counsel seeks pretrial dismissal of any claim, counsel can urge a proper motion to dismiss, for judgment on the pleadings, or for summary judgment under Fed.R.Civ.P. 12(b), (c) or Fed.R.Civ.P. 54, respectively.

The lack of legal authority for this type of motion is basis enough to deny the defendants' motion.  However, for the benefit of a reviewing Court, and to avoid the possibility of any further unnecessary motions being filed by counsel, the Court issues the following report.

## III.   <u>Standards of Review</u>

Title 28 U.S.C. § 1915(e) and § 1915A, and with specific reference to prison conditions, Title 42 U.S.C. § 1997e(c), require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional

9

allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves,* 27 F.3d at 176; *see Jackson*, 49 F.3d at 176-77; *Moore*, 976 F.2d at 269.

## IV.   Tyson's Claims

In the instant case, Tyson alleges that his state and federal constitutional rights have been violated as a result of the prison officials' decisions to order restitution and non-contact visitation after he was found guilty of possession of his contraband medication, all in addition to the sentence to isolation and/or loss of good-time credits imposed by the disciplinary boards. He alleges that the defendants also denied him his constitutional rights when they failed to advise him of his right to appeal the imposition of the restitution and non-contact visitation, which he declares was improperly imposed against him and contrary to Louisiana law.

Tyson also argues that Louisiana's restitution statute, La. Rev. Stat. Ann. § 15:875(C)(1), was improperly applied to him in an unconstitutional manner since he never has had a positive drug test. He also contends that Louisiana law does not authorize the prison officials to place him on non-contact visitation, because he was not in possession of the catapress during visitation, as required by the prison policy.

Tyson further argues that the Louisiana Administrative Remedy Procedure statute, La. Rev. Stat. Ann. § 15:1172(C), is unconstitutional and violates due process since it does not create an exception for an inmate to obtain judicial review where the prison officials fail to advise the inmate of his appellate rights. He also alleges that the defendants failed to provide him with legal assistance

or inmate counsel during his administrative proceedings in violation of due process and equal protection.

As clearly set forth in Tyson's pleadings, as supplemented by his *Spears* testimony, he summarizes his claims as follows: (1) he was denied his appellate rights after the disciplinary proceedings and imposition of restitution and non-contact visits because he was not informed of his rights by the prison officials; (2) the application of drug testing and restitution to him is unconstitutional and violates state law; (3) the policy and practice of imposting non-contact visitation is unconstitutional and was imposed without a hearing or opportunity to defend against it; (4) the imposition of restitution and non-contact visitation against him violated the constitution and state law, because there was no hearing or finding of guilt as required by prison rules and Louisiana law; (5) the non-contact visitation penalty was arbitrary and unrelated to the possession of contraband in his cell; and (6) forfeiture of his appellate rights was a result of the Defendants' breach of their duties.

### A.      Eleventh Amendment Immunity

Tyson has named the State of Louisiana, through the Attorney General, as a Defendant in this case.  He also has named each of the Defendants, Tanner, Travis, LeBlanc, Stalder, Crawford, and Rigdon, in their official capacities.  This warrants consideration of the Eleventh Amendment Immunity doctrine.

### 1.      The State of Louisiana

Tyson has named the State of Louisiana as a Defendant in his Amended Complaint, which invokes both federal and state law liability and which seeks both monetary, declaratory, and

injunctive relief.[8]  The Eleventh Amendment to the United States Constitution, however, forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his or her own State.  *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986).   An exception to the Eleventh Amendment prohibition exists where the State has expressly waived its sovereign immunity.  *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dept. of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986).  However, the State of Louisiana has not done so in this case.  Furthermore, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Thus, Tyson's claims against the State of Louisiana are barred by the Eleventh Amendment. Because the Eleventh Amendment deprives this Court of jurisdiction over the claims against the State, those claims should be dismissed without prejudice.  *See Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir. 1996).

### 2.      Tanner, Travis, LeBlanc, Stalder, Crawford, and Rigdon, each in his Official Capacity

Each of these officers has been named in both his individual and official capacity.  However, a state actor is not, in his official capacity, considered to a person for purposes of suit under § 1983. *Will v. Michigan Dept. of St. Police*, 491 U.S. 58 (1989).  In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is

---

[8]Although he does so "through the Attorney General," he does not indicate any intent to also name Attorney General Foti as a defendant.

12

considered to be one taken against the department he represents.  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978).

In this case, these Defendants are employed by the DOC, which is a department within the Louisiana state government.  La. Rev. Stat. Ann. § 36:401.  For Eleventh Amendment purposes, the DOC is considered an arm of the state since any money judgment against it or its subdivisions necessarily would be paid from state funds.  *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).

Therefore, suit against the State or the DOC implicates the Eleventh Amendment immunity doctrine.  *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)).  As set forth above, the Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State.  *Pennhurst*, 465 U.S. at 98;  *Voisin's Oyster House, Inc.*, 799 F.2d at 185-86.  As resolved above, the State, nor the DOC, has not expressly waived immunity in this case.  Accordingly, the Court is without jurisdiction to hear Tyson's claims for monetary relief against the State of Louisiana, the DOC, or the named Defendants in their official capacities.  Those claims should be dismissed without prejudice.  *See Warnock,* 88 F.3d at 343.

Tyson, however, also seeks declaratory and injunctive relief, not just monetary damages, related the constitutionality of certain Louisiana laws, against the State and the remaining named Defendants.  Tyson seeks declaratory and injunctive relief to have the prison's restitution and non-

visitation policy, in connection with La. Rev. Stat. Ann. § 15:875(C)(1), and La. Rev. Stat. Ann. § 15:1172(C) deemed unconstitutional as applied to him and to have the Defendants enjoined from imposing restitution and non-contact visits on him in the future.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity.  The Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law.  *See Amer. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993).  Therefore, the Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials are acting in violation of federal law.  *Ex Parte Young*, 209 U.S. at 155-56; *Edelman*, 415 U.S. at 664; *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988).

In *Edelman*, the Supreme Court made clear that under § 1983 "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury."  *Edelman*, 415 U.S. at 677.  In a clear reliance upon *Ex Parte Young*, the Supreme Court went on to hold that "§ 1983 does <u>not</u> explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States.  Nor does our reaffirmation of *Edelman* render § 1983 meaningless insofar as States are concerned.  *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." (emphasis added) *Quern v. Jordan*, 440 U.S. 332 (1979).

The *Quern* Court made this distinction between § 1983 and other federal laws which seemingly allowed for or demonstrated Congressional intent to override the impact of the Eleventh Amendment.  To meet the *Ex Parte Young* exception in its application to a § 1983 suit, a plaintiff's suit alleging a violation of federal law must be brought against <u>individual persons in their official capacities</u> as agents of the state, and the relief sought must be <u>declaratory or injunctive in nature and prospective in effect</u>.  *See Saltz v. Tennessee Dept. of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992).  Thus, while declaratory and prospective injunctive relief cannot be pursued against the State in federal court, it can be pursued against a state official sued in his official capacity.

In the instant case, Tyson has requested prospective injunctive and declaratory relief against the Defendants Travis, Tanner, LeBlanc, Stalder, Crawford, and Rigdon, in their official capacities. On a preliminary review of these claims under § 1915, § 1915A, and § 1997e, the Court cannot find that the claims are necessarily frivolous or that they fail to state a cognizable claim at this time.

For the foregoing reasons, Tyson's claims against these defendants in their official capacity can be dismissed without prejudice in so far as Tyson's seeks monetary damages.  However, to the extent Tyson seeks declaratory and prospective injunctive relief against Travis, Tanner, LeBlanc, Stalder, Crawford, and Rigdon, each in their official capacity, the claims survive dismissal under the Court's initial screening under § 1915, § 1915A, and § 1997e.

**B.**      <u>**Claims Against the Defendants in Their Individual Capacities**</u>

In the instant case, Tyson alleges that Wardens Tanner and Travis were personally involved in the handling of his administrative grievances arising from the administrative restrictions placed upon him.  He also alleges that these Defendants were the policy-makers during their respective

tenures as Warden and each was therefore responsible for the implementation and application of the prison policy regarding restitution and non-contact visitation.

Tyson further argues that Crawford and Rigdon are liable to him for their individual roles in actually applying the prison policy and imposing restitution and non-contact visitation to him, in violation of his state and federal constitutional rights and in violation of Louisiana law.

With regard to former Secretary Stalder and Secretary LeBlanc, Tyson alleges that they each should be held liable because of their role in denying his appeal to the DOC during his administrative remedy proceeding.  He also alleges that Stalder and LeBlanc, during their respective tenures, knew or should have known of the policies being utilized by the RCC officials who were under their control.

In *Sandin v. Connor*, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a convicted prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists.  "Liberty interests protected by the Fourteenth Amendment may arise from two sources– the Due Process Clause itself and the laws of the States."  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).  In *Sandin*, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process did not require that the prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Hewitt*, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). The *Madison* court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." *Id.*, at 768. The court further held that such restrictions are "penalties, which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." *Id*.

In *Wolff*, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. *Wolff*, 418 U.S. at 556. Nevertheless, the *Wolff* Court held that prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing, and some opportunity to present evidence on the prisoner's behalf. *Id*.

In this case, Tyson is not per se challenging the underlying disciplinary conviction for possession of the catapress. He instead is challenging the application of the prison's policy to impose the restitution and non-contact visitation as penalties against him separate from his disciplinary proceedings and which were imposed without a hearing on their applicability, as required by statute for the restitution. He claims he was afforded no notice or hearing or opportunity to defend against the restitution and non-contact visitation policy or to appeal the officials' decision to apply the policy to him.

Arising from this, he also alleges that the restitution statute and the administrative remedy statute discussed above are unconstitutional and/or were unconstitutionally applied to him. He also

contends that the restrictions were contrary to state law and demonstrated a breach of duty on the part of the Defendants.  Thus, Tyson has stated claims at least sufficient to survive initial screening.

The Court must consider which Defendants are subject to liability for these alleged violations based on the facts alleged by Tyson.  Proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to his liability on the claim under §1983.  However, supervisory officials cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).  Instead, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."  *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

A supervising officer not personally involved in the acts that deprived the plaintiff of his constitutional rights may be liable under § 1983 if: (1) the warden or supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991) (citations omitted).  Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that a lack of training or supervision caused a violation of his constitutional rights.  *Thompson*, 245 F.3d at 459 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir.1998) and *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5th Cir. 1987)).

18

A supervisory official may also be liable under § 1983, "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304.  A plaintiff also may establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by the defendants as an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Tyson's complaints and *Spears* testimony include allegations which, for purposes of this initial screening, personally link Travis, Tanner, Crawford, and Rigdon to consideration of his administrative complaints, the application of the restitution and non-contact visitation policy to him, to the implementation of the prison policies he challenges, and/or to the alleged improper application of the restitution statute against him.  He also includes these officials in his suggestion that he was denied notice and a hearing and notice of his appellate rights, when the restitution and visitation restrictions were imposed subsequent to the disciplinary proceedings for which he received separate punishments.

With respect to Stalder and LeBlanc, Tyson alleges only that their offices responded to his administrative grievance appeal of his disciplinary conviction and that they are the over-seers of the DOC officials and RCC.  Thus, in their individual capacities under § 1983, Tyson has not identified a personal involvement in the alleged violations.  These defendants can not be held liable under § 1983 for the actions of the other prison officials.  This is not true under Louisiana law, where respondeat superior is a viable claim.  La. Civ. Code art. 2320; *Pender v. Elmore*, 855 So.2d 930 (La. App. 2d Cir. 2003).

19

**VI.**     **Recommendation**

IT IS THEREFORE RECOMMENDED that the **"Motion for Review Under 42 U.S.C. § 1915A" (Rec. Doc. No. 34)** filed by the Defendants, Warden Robert Tanner, Chief Jeffery Travis, Major Tim Crawford, and Captain Wade Rigdon, be **DENIED**.

IT IS FURTHER RECOMMENDED that the Plaintiff Antonio Tyson's state and federal claims against the State of Louisiana, through Attorney General Foti, be **DISMISSED WITHOUT PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e, because the Court lacks jurisdiction under the Eleventh Amendment immunity doctrine.

IT IS FURTHER RECOMMENDED that Tyson's claims against the Defendants, Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, for which he seeks monetary damages against each in his official capacity, be **DISMISSED WITHOUT PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e, because the Court lacks jurisdiction under the Eleventh Amendment immunity doctrine.

IT IS FURTHER RECOMMENDED that Tyson's 42 U.S.C. § 1983 claims against the Defendants Stalder and LeBlanc, each in his individual capacity, be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e.

Remaining before the Court should be the following: (1) the Plaintiff's § 1983 claims for declaratory and injunctive relief against the Defendants Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, each in his official capacity, related to the application of and challenge to the constitutionality of La. Rev. Stat. 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C); (2) the Plaintiff's

state law claims of respondeat superior against Stalder and LeBlanc; and (3) the Plaintiff's § 1983 due process, equal protection and/or improper policy claims, and related state law breach of duty claims, against the defendants Travis, Tanner, Crawford, and Rigdon, for imposing restitution and non-contact visitation in violation of the state and federal constitutions and La. Rev. Stat. Ann. § 15:875(C), for failure to provide him with notice, a hearing, and notice of his appellate rights before imposing restitution and non-contact visitation, and for failing to provide him with counsel to assist in his challenge to the imposition of restitution and non-contact visitation.  The allegations before the Court on these issues are sufficient to survive this initial review under 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e.  These claims **REMAIN REFERRED** to the undersigned magistrate judge pursuant to the Court's automatic referral rules.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 7th day of August, 2009.


**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

21