# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ANTONIO TYSON

CIVIL ACTION

VERSUS

NO. 08-4445

ROBERT C. TANNER-WARDEN, JEFFERY
TRAVIS-EX WARDEN, JAMES LEBLANC-
SECRETARY, RICHARD STALDER-EX
SECRETARY, TIM CRAWFORD-MAJOR,
WADE RIGDON-CAPTAIN

SECTION "I"(4)

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is the **Motion for Partial Dismissal (Rec. Doc. No. 44)** filed by the

defendants former Secretary Richard Stalder, Secretary James LeBlanc, Warden Robert Tanner,

former Warden Jeffery Travis, Major Tim Crawford, and Captain Wade Rigdon. In this motion, the

movants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of the plaintiff's claims against Stalder

in his official and individual capacities, those against Travis in his official capacity, and those

against Secretary LeBlanc, in his individual capacity, pursuant to Fed. R. Civ. P. 12(b)(6). The

defendants also seek dismissal of the plaintiff's claims regarding non-contact visitation for failure

to state a claim pursuant to Rule 12(b)(6). The plaintiff, Antonio Tyson, has filed an opposition to

this motion.[1]

---

[1]Rec. Doc. No. 45.

This motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. The Court has determined that the motion can be resolved without an evidentiary hearing.

## I.    Factual and Procedural Background

### A.    The Complaint and Amended Complaint

The plaintiff, Antonio Tyson ("Tyson"), is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[2] He filed the captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner, former Warden Jeffrey Travis, Major Tim Crawford, Captain Wade Rigdon, Louisiana Department of Corrections Secretary James LeBlanc, and former Secretary Richard Stalder, alleging due process and equal protections violations under the Fourth and Fourteenth Amendment of the U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.

The plaintiff alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of a violating a prison regulation prohibiting him from the unauthorized possession of his medication, catapress. After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10 days in an isolation cell with a loss of 60 days of good-time credits. He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford. After the

---

[2]Rec. Doc. No. 1.

incident, on December 6, 2007, he was sentenced to 20 days in an isolation cell. Captain Rigdon

also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six

months. In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days

in an isolation cell, with non-contact visitation and restitution for drug testing for another six months

imposed by Captain Rigdon. The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson argues that the restitution and non-contact visitation are not authorized punishments

under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug tests.[3] He

---

[3]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.

D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.

E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.

F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.

G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.

H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.

I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary

also alleges that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials. He also claims that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

As relief, Tyson seeks judgment declaring that RCC's policy of requiring restitution for negative drug test and non-contact visitation as additional disciplinary sentences violates Louisiana law and the Due Process clause. He also seeks declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses. He seeks to enjoin RCC and DOC from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws. He also request that he be awarded $5,000 in compensatory damages, the return of money paid in restitution, $10,000 in punitive damages, costs, appointment of counsel, and certification of a class.

Contemporaneous with the filing of the complaint, Tyson submitted an Amended Complaint in which added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr., as a defendant. He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[4] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of the prison officials wrongful action where prison officials fail to provide the inmate with notice of his administrative appeal rights. He also claims that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

---

measures upon an offender as a result of his actions.

[4]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

**B.     The *Spears* Hearing**

Tyson testified that he has been incarcerated for 17 years.  Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress, the medicine he is prescribed to take for high blood pressure.  He indicated that, on each occasion, he was taken before the disciplinary board and given a sentence in isolation and/or a loss of good-time credits.

He complains further that, in addition to the sentence imposed by the disciplinary board, the prison officials also impose a separate policy which caused him to lose his contact visits and required him to pay $10 a month for urine tests.  He states that this policy violates Louisiana law and did not apply to him.  He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test.  He claims that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied.  He also indicated that he filed suit in East Baton Rouge Parish, as required by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation.  This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs.  He indicated that the guards would pass out the medication three times a day but they do not watch him take it.  Sometimes, he would not take it right away.  He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365. He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as warden. He conceded that he was not aware whether Tanner or Travis had personal knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as defendants because, as DOC secretaries, they are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

C.    **Procedural Background**

On August 7, 2009, the undersigned issued a Report and Recommendation (Rec. Doc. No. 37) in which it was recommended that the Tyson's state and federal claims against the State of Louisiana, through Attorney General Foti, be dismissed without prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e, because the Court lacked jurisdiction under the Eleventh Amendment immunity doctrine; that Tyson's claims against the defendants, Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, for which he sought monetary damages against each in his official capacity, be dismissed without prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant

§ 1915, § 1915A, and § 1997e, because the Court lacked jurisdiction under the Eleventh Amendment immunity doctrine; and that Tyson's 42 U.S.C. § 1983 claims against the Stalder and LeBlanc, each in his individual capacity, be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant § 1915, § 1915A, and § 1997e.

The Report and Recommendation was adopted by the District Judge's Order (Rec. Doc. No. 41) issued August 31, 2009. Having done so, the issues remaining before the Court are as follows: (1) Tyson's § 1983 claims for declaratory and injunctive relief against the defendants Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, each in his official capacity, related to the application of and challenge to the constitutionality of La. Rev. Stat. Ann. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C); (2) Tyson's state law claims of respondeat superior against Stalder and LeBlanc; and (3) Tyson's § 1983 due process, equal protection and/or improper policy claims, and related state law breach of duty claims, against the defendants Travis, Tanner, Crawford, and Rigdon, for imposing restitution and non-contact visitation in violation of the state and federal constitutions and La. Rev. Stat. Ann. § 15:875(C), for failure to provide him with notice, a hearing, and notice of his appellate rights before imposing restitution and non-contact visitation, and for failing to provide him with counsel to assist in his challenge to the imposition of restitution and non-contact visitation.

## II.    **Defendants' Motion to Dismiss**

### A.    **Defendants' Arguments**

The defendants, Stalder, LeBlanc, Tanner, Travis, Crawford, and Rigdon, filed the instant motion seeking dismissal of the claims against former Secretary Stalder and former Warden Travis in their official capacities because they no longer hold the official offices to effect the requested

relief. They further seek dismissal of the claims against Stalder and LeBlanc, each in their individual capacities, because the Louisiana Department of Corrections ("DOC"), and not its Secretary, is vicariously liable for the acts of its employees. The movants also seek dismissal of Tyson's § 1983 claims related to non-contact visitation because such policies do not violate the United States Constitution, thus rendering moot his requests for declaratory and injunctive relief on that issue.

Based on the motion, the defendants suggest that the granting of their motion would leave the following claims for the Court to consider:

> (1) 42 U.S.C. §1983 claims against defendants Secretary LeBlanc, Warden Robert Tanner, Major Tim Crawford and Captain Wade Rigdon, in an official capacity, to challenge the constitutionality of the policy that requires inmates be subject to drug testing at their cost following a contraband drug conviction; (2) 42 U.S.C. §1983 claims against former Warden Travis, Warden Tanner, Major Crawford, and Captain Rigdon, in their individual capacity, for monetary relief for imposing the policy and/or following the policy regarding drug testing; and (3) state law claims against Travis, Tanner, Crawford and Rigdon, individually.

Motion for Partial Dismissal, Rec. Doc. No. 44, pp. 2-3, ¶6.

The Court on January 12, 2010, issued an order directing the defendants to file copies of any DOC regulations or policies and any prison regulations or policies at RCC which would define the phrase "contraband" and the phrase "unauthorized medication," which relate to the possession of contraband charges against Tyson, at issue in this case.[5] In response to the order,[6] the defendants referred the Court to and provided copies of the following: (1) La. Admin. Code tit. 22, § 363(B); (2) La. Rev. Stat. Ann. § 14:402; (3) RCC Inmate Posted Policy #34, Pill Call (eff. 9/22/08); and (4)

---

[5]Rec. Doc. No. 66.

[6]Rec. Doc. No. 77, Notice of Compliance.

an internal memorandum from Assistant Warden Kathleen McGinnis dated November 19, 2007, regarding restricted visitation and brand and generic name drug listings, which include Catapress.

**B.     Tyson's Opposition**

In his opposition to this motion, Tyson argues that defendants, former Secretary Stalder and Secretary LeBlanc, are liable for the wrongful promulgation of DOC Regulations #B-05-003 and #C-02-008, which he claims impose restitution and loss of contact visitation against an inmate without due process in violation of the Fourth and Fourteenth Amendments, La. Rev. Stat. Ann. § 15:875 (C)(1), (D), and (E); and La. Civ. Code art. 2320.  Tyson asserts that these regulations were used against him by the subordinates of Stalder and LeBlanc at RCC.

Tyson further contends that former Warden Travis is liable for the promulgation of RCC posted policies, #5.4.1(N) and #25.  He does not identify the nature of these policies.  He also contends that Travis is liable for the wrongful enforcement of the DOC policies listed above without due process in violation of the Fourth and Fourteenth Amendments,  La. Rev. Stat. Ann. § 15:875 (C)(1) and (D); and La. Civ. Code art. 2320.

He further argues that he was in possession of his own prescribed medication and that his rights were violated when he was disciplined without notice or a hearing, in violation of the Disciplinary Rules and Procedures for Adult Prisoners and the Due Process Clause.

Tyson also argues that the State of Louisiana is a proper defendant because he is seeking declaratory and injunctive relief.  He also claims that the defendants are prohibited by collateral estoppel and res judicata from raising these defenses because they did not object to the Magistrate Judge's prior Report and Recommendation.

**III. <u>Standards of Review for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The United States Supreme Court has held that Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court went on in *Ashcroft* to clarify:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Id.* 129 S. Ct. at 1949 (quoting *Bell Atl. Corp.*, 550 U.S. at 555) (internal citations omitted).

Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555-56 (uppercase and parenthetical in original) (quotation marks, citations, and footnote omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp.*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)). "But, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'  Fed. Rule Civ. Proc. 8(a)(2)."  *Ashcroft*, 129 S. Ct. at 1950.

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint.  However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted.  *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint, and consider material subsequently filed as amendments to that complaint.  *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

## IV.    Analysis

### A.    Official Capacity Claims against Stalder and Travis

Former Secretary Stalder and former Warden Travis move this Court to dismiss the claims for declaratory and injunctive relief against them in their official capacities because they no longer hold their official positions and are not in a position to provide the relief sought.  In his opposition

memorandum, Tyson simply argues that these defendants should be held liable for the policies at issue and for the imposition of those policies by the RCC personnel.

As outlined above, after issuance of the Court's prior Report and Recommendation and the Order adopting it, among the issues reserved for further review in this matter were Tyson's § 1983 claims for declaratory and injunctive relief against the Defendants Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, each in his official capacity, related to the application of and challenge to the

constitutionality of La. Rev. Stat. 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C). This claim survived the initial review for frivolousness under the *Ex Parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974). To meet the *Ex Parte Young* exception in its application to a § 1983 suit, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tenn. Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). As a result, while declaratory and prospective injunctive relief cannot be pursued against the State in federal court, it can be pursued against a state official sued in his official capacity. Under this reasoning, the Court retained as non-frivolous Tyson's claims for declaratory and injunctive relief against the defendants, including Stalder and Travis, each in their official capacities.

In the instant motion, Stalder and Travis emphasize that they are no longer in the prior positions of DOC Secretary and Warden of RCC, respectively. As such, Tyson seeks relief against defendants who can not provide the relief sought.

In order to obtain declaratory and injunctive relief under the *Ex Parte Young* exception, a plaintiff must establish standing by showing: (1) injury in fact; (2) causation; and (3) redressability. *Gregory v. Tex. Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In this case, neither Stalder nor Travis are employed in the official positions in which they have been named. Tyson does not dispute their contention that they no longer have the authority of those offices. Tyson has failed to show that his claim as urged against Stalder and Travis is redressable and his claim for declaratory and injunctive relief against these defendants, each in their official capacities, must be dismissed. *Gregory*, 111 F. App'x at 721; *see generally Volk v. Gonzalez*, 207 F.3d 657, No. 97-51032/98-50199/98-50386, 2000 WL 122381 (5th Cir. Jan. 4, 2000) (Table, Text in Westlaw) (district court improperly granted injunctive relief where neither defendant had the power to effectuate the court's decrees). The defendants' motion to dismiss should be granted as to this issue.

### B.     State Law Respondeat Superior Claims Against Stalder and LeBlanc in Their Individual Capacities

Former Secretary Stalder and Secretary LeBlanc also seek dismissal of the remaining state law claims urged against them in their individual capacities. The defendants argue that it is the DOC which should answer for the actions of its employees and not these officers. Tyson, under a broad reading, argues in his opposition that these defendants should be liable for the imposition by RCC employees of the policies promulgated by Stalder and LeBlanc.

After issuance of the Court's prior Report and Recommendation and the Order adopting it, among the issues reserved for further review in this matter were Tyson's state law claims of respondeat superior urged against Stalder and LeBlanc in their individual capacities.

Under Louisiana law, an employer will be vicariously liable for the tortious acts of his employee if the acts occurred while the employee was in the course and scope of his employment with the employer. This liability arises pursuant to La. Civ. Code art. 2320, which states in part that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." In the prison setting, the Louisiana courts have held that it is the State, not the supervisor, who bears liability for the acts of its employee. *See Latullas v. State*, 658 So. 2d 800, 804 (La. Ct. App. 1995) (State, not warden, vicariously liable when DOC guard raped prison inmate); *Becnel v. Charlet*, 569 So. 2d 9, 11 (La. Ct. App. 1990) (State vicariously liable for acts of DOC prison guard); *see also* La. Rev. Stat. Ann. § 42:1441.1 (2009);[7] La. Rev. Stat. Ann. § 13:5108.1(A)(1) (2009).[8] Neither former Secretary Stalder nor Secretary LeBlanc are the employers of the guards and officials at RCC for purposes of Louisiana tort law. *Accord Mitchell v. CCA of Tenn., Inc.*, No. 04-1031-A, 2007-WL-837293, at *7 (W.D. La. Mar. 15, 2007) (Under Louisiana law, Secretary Stalder was not the employer of prison guard at Winn Correctional Center). The state law respondeat superior claims against Stalder

---

[7]La. Rev. Stat. Ann. § 1441.1 provides that "Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi offenses of his servant shall not extend or apply to and shall not impose liability on the state for the offenses and quasi offenses of any person who is not expressly specified by R.S. 13:5108.2(A) to be an official, officer, or employee of the state entitled to indemnification under R.S. 13:5108.2." La. Rev. Stat. Ann. § 13:5108.2 has been repealed and replaced with La. Rev. Stat. Ann. § 13:5108.1, cited hereafter.

[8]La. Rev. Stat. Ann. § 13:5108.1 defines covered employees as "(1) An official, officer, or employee holding office or employment: (a) In the executive branch of state government or in any department, office, division, or agency thereof. (b) In the legislative branch of state government or in any house, committee, or office thereof. (c) In the state supreme court or in the office of the clerk thereof or office of judicial administrator thereof, in one of the circuit courts of appeal or in the office of clerk thereof, or in any of the family, juvenile, or judicial district courts of the state or in the offices of the judicial administrators thereof. (d) In one of the deep-water ports, deep-water port commissions, or deep-water port, harbor, and terminal districts. (2) A physician who either contracts with or provides services on behalf of the state or any of its departments, whether compensated or not, in treating and performing evaluations of persons when such persons cause harm to third parties. For the purposes of this Section, such physicians who provide services under contract shall be deemed to be employees of the contracting agency.

and LeBlanc in their individual capacities must be dismissed. The defendants' motion to dismiss should be granted on this issue.

## C.     Claims Arising from Restrictions on Visitation

In the memorandum in support of the complaint, the remaining defendants, Travis, Tanner, Crawford, and Rigdon, argue that Tyson's claims seeking monetary, declaratory, and injunctive relief, related to policy which led to the imposition of restrictions on his visitation after his disciplinary conviction for possession of contraband drugs should also be dismissed. The defendants argue that the United States Supreme Court has deemed this to be a security measure which is rationally related to a legitimate penological purpose. Consequently, the defendants contend that Tyson's claim regarding restrictions on visitation, limiting him to non-contact visitation, should be dismissed.

In support of the motion, the defendants contend that the Supreme Court unanimously upheld the constitutionality of an even more restrictive policy considered in *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003). In *Overton,* the prison officials imposed a two-year ban on visitation for a prisoner who had been convicted of two substance abuse violations. The Supreme Court resolved that this did not violate the Constitution because it served the legitimate goal of deterring the use of drugs and alcohol within the prisons. *Id.* The Court held that "[d]espite the importance of the rights there at issue . . . withholding such privileges 'is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.'" *Beard v. Banks*, 548 U.S. 521, 533 (2006) (quoting *Overton*, 539 U.S. at 134) (addressing whether restrictions on newspapers, magazines and photographs violated the inmates' First Amendment rights).

In his complaint, Tyson challenges the policy and/or practice at RCC of punishing him with drug testing at his expense and by restricting his visitation when he was found guilty of possession prescription medication that the prison officials provided to him for high blood pressure. He argues that he was not in possession of "contraband," but rather medication he was supposed to have but had not yet taken. He therefore contends that the imposition of non-contact visitation and drug testing at his expense is unconstitutional. In contrast, in *Overton*, the inmates were subject to a disciplinary finding and conviction for possessing of illicit drugs smuggled into the jail, not prescription drugs provided by the jail's medical department.

While the Supreme Court's decree in *Overton* and *Beard* upheld certain policies restricting prisoner privileges, in both cases that decision was based on a finding that "on the basis of the record" before them, the "prison officials have set forth adequate legal support for the policy." *Beard*, 548 U.S. at 525. This was important because the Court recognized that prison rules and policies restricting a prisoner's rights must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). For example, in *Beard*, the matter was before the Court's on motion for summary judgment with evidentiary support from the prison officials sufficient to base its decision of the validity of the policy at issue, noting that the prisoner had not presented anything disproving its validity.

In both cases, subjective consideration of the policy and the proposed basis for the policy (legitimate penological interest) were before the Court and considered before concluding that the policies did not violate the constitution. Contrary to the State's argument, the Supreme Court did not present a blanket ruling that all visitation restrictions are necessarily constitutional. Instead, the Court exercised consideration of the *Turner* factors: (1) whether the regulation has a "valid, rational

connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation. *Turner*, 482 U.S. at 89.

In this case, because the matter is presented only on motion to dismiss, the State has not presented the Court with anything for the Court to consider the *Turner* factors. While it is not necessarily the prison's burden to prove the policy legitimate, it is not sufficient for the prison to make conclusory and unsupported statements in a motion to dismiss. There is nothing before the Court to support the conclusion that the policy is based on a legitimate constitutional premise, such as discipline or safety. While that is argued and concluded, it is not supported by any factual or evidentiary means, as was before the Supreme Court in *Overton* and *Beard*.

Furthermore, the defendants further contend that the claims against the remaining defendants for declaratory and injunctive relief should be dismissed since the policy is not unconstitutional under *Overton* and therefore warrants no such relief. Again, this argument is solely based on the defendants insistence that *Overton* essentially bars any challenge to any policy that restricts visitation. The Court declines to read *Overton* in that manner. *Accord Ryerse v. Caruso*, No. 1:08-CV-516, 2009 WL 2982756, at *9 (W.D. Mich. Sept. 11, 2009) (Order adopting Report and Recommendation) ("While *Overton* upheld a regulation allowing officials to restrict a prisoner's visitation for two years, it cannot be said that *Overton* 'clearly established' the constitutionality of the permanent visitation restriction in this case." )

While it is possible that this policy can be found to be constitutional, there is no mandate in *Overton* that all visitation restrictions are constitutional without having to meet the *Turner v. Safley*

standards.  Furthermore, in *Overton*, the restricted visitation policy at issue was legitimately addressing the problem of <u>outside</u> contraband being smuggled into the prison, not the hoarding of medication prescribed by prison doctors for the inmate found possessing it, as here.

The Court must be given the opportunity to consider the policy in an appropriate manner as required by *Turner*, more properly addressed on summary judgment with supporting documentation setting forth the basis for the policy and any penological interest to which it is attached.  This motion, based solely on the four corners of Tyson's petition and the statutes and policies referenced therein, does not provide the Court with the information necessary to answer the *Turner* factors.  The motion must be denied on this issue.

At this stage, in the context of a motion to dismiss addressing the four corners of the complaint, the Court is unable to grant the relief sought.  The defendants' motion should denied on this issue.

### D.      <u>Qualified Immunity Defense</u>

The defendants also argue in their motion that, if the law is not clear regarding policies that restrict visitation, then they are entitled to qualified immunity from suit for monetary damages in their individual capacities.[9]  The defendants contend that if the prison officials could not rely on *Overton* as a clear statement of the law, then the law related to visitation restrictions is not clearly established, and they can not be held liable under § 1983.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

---

[9]The doctrine of qualified immunity shields government officials from money damages, not suits for injunctive or declaratory relief.  *Davis v. Lensing*, 139 F.3d 899, 1998 WL 127839, at *1 (5th Cir. 1998) (Table, Text in Westlaw) (citing *Chrissy F. by Medley v. Miss. Dep't of Public Welfare*, 925 F.2d 844, 849 (5th Cir.1991)).

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Although qualified immunity is an affirmative defense, "the plaintiff has the burden to negate the

assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217

(5th Cir. 2009).

The courts utilize a two-step analysis to determine whether officials are entitled to qualified

immunity for a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled

in part by Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 813 (2009); *see also Collier*, 569 F.3d

at 217. The United States Supreme Court has recognized that the lower courts have the discretion

to decide which prong to address first, "in light of the circumstances of the particular case at hand."

*Pearson*, 129 S. Ct. at 818; *Collier*, 569 F.3d at 217.

The courts will determine whether the plaintiff has alleged a violation of a constitutional

right and whether the officers' conduct was objectively reasonable in light of clearly established law

at the time the challenged conduct occurred. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.

2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). In determining this, the courts will

apply an objective standard, "based on the viewpoint of a reasonable official in light of the

information then available to the defendant and the law that was clearly established at the time of

the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

For a right to be "clearly established," " '[t]he contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right.' " *Kinney v.

Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (quoting *Anderson*, 483 U.S. at 640); *Wernecke v.

Garcia*, 591 F.3d 386 (5th Cir. 2009). "The 'clearly established' standard does not mean that

officials' conduct is protected by qualified immunity unless 'the very action in question has

previously been held unlawful.'" *Id*. at 350 (quoting *Anderson*, 483 U.S. at 640. "[W]hat 'clearly established' means . . . depends largely 'upon the level of generality at which the relevant "legal rule" is to be identified.'" *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson*, 483 U.S. at 639).

"[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract." *Kinney*, 367 F.3d at 350. Officials should receive the protection of qualified immunity "unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Id*. (quoting *Saucier*, 533 U.S. at 206). The Court's focus, for purposes of the "clearly established" analysis, qualified immunity is unavailable "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

Under federal law, the Due Process Clause does not create a right to unrestricted visitation for persons held in detention. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989). Restrictive visitation procedures are within the scope of prison security, and as such are subject to the broad discretion of afforded prison officials in running their jails. *Overton*, 539 U.S. at 132; *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999). Furthermore, prisoners have no *per se* constitutional right to contact visits. *Berry*, 192 F.3d at 508; *Clark v. Woods*, No. 7:99-CV-173-R, 2001 WL 123668, at *8 (N.D. Tex. Jan. 16, 2001) (defendant's action in terminating inmate's contact visit privileges did not rise to the level of a constitutional violation). Visitation privileges, therefore, are subject to the discretion of correctional personnel and may be limited or even revoked in the furtherance of legitimate penological objectives. *Berry*, 192 F.3d at 508; *Charles v. Nance*,

186 F. App'x 494, 495 (5th Cir. 2006) ("[P]risoners have no absolute constitutional right of visitation."); *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975) ("Visitation privileges are a matter subject to the discretion of prison officials.").

However, the Supreme Court also has held that "state law may create enforceable liberty interests in the prison setting" under the Due Process Clause. *Ky. Dep't of Corr.*, 490 U.S. at 461. In *Sandin v. Connor*, 515 U.S. 472, 482 (1995), the Supreme Court narrowly defined the scope of when a state law creates a liberty interest:

> Following [*Wolff v. McDonnell*, 418 U.S. 539 (1974)], we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84 (internal citations omitted). The Court went on to hold that actions affecting the conditions of prison confinement implicate a prisoner's constitutional rights only where the actions impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483-84.

Subsequently, in *Overton*, relied upon by the defendants in this motion, the Supreme Court stated that "[t]he very object of imprisonment is confinement. Many liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131 (internal citations omitted). The Court in *Overton* determined that the courts will uphold visitation restrictions which "bear a rational relation to legitimate penological interests." *Id*. at 132. As noted above, if a prison

regulation "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. As discussed above, the determination of whether the policy at issue meets a legitimate penological interest is not ripe before this Court.

Nevertheless, despite the lack of evidentiary support for legitimate penological reasons at this stage, the defendants are entitled to qualified immunity from claims for money damages based on the restrictions to his visitation. As noted above, qualified immunity applies <u>unless</u> the facts show that a particular defendant's conduct violated a constitutional right that was clearly established at the time of the violation. *See Saucier*, 533 U.S. at 194.

The Court's research has not located any precedent which would clearly define a right to visitation without the restrictions imposed upon Tyson. There are no prior decisions which "gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740. For these reasons, the Court can not find that the right at issue was clearly defined under circumstances like those before the Court, without declaring here whether the allegations or facts make out a violation under current law. *See Collier*, 569 F.3d at 217 (citing *Pearson*, 129 S. Ct. at 808).

Even if the Court was later to determine that the plaintiff here had a protected right to visitation under the circumstances of this case, unlike the plaintiffs in *Overton*, then this would do no more than to confirm the uncertainty of the law at the time of the events and support the application of qualified immunity here. Furthermore, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (footnote omitted). Thus,

to the extent Tyson may claim that the defendants failed to adhere to prison administrative procedures in imposing these restrictions, he would not overcome the qualified immunity shield.

For the foregoing reasons, the defendants, Travis, Tanner, Crawford, and Rigdon, are entitled to qualified immunity in their individual capacities from Tyson's claims for monetary damages arising out of the imposition of the contraband policy and related restrictions placed on his visitation. The motion should be granted as to this issue.

### E.    Remaining Claims for Declaratory and Injunctive Relief

Having made the foregoing findings and recommendations, the claims remaining before the Court at this juncture would be Tyson's § 1983 claims for declaratory and injunctive relief against the defendants, Travis, Tanner, Crawford, and Rigdon, each in his official capacity, related to the application of, and challenge to the constitutionality of, La. Rev. Stat. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C), as well as the state law claims of respondeat superior and breach of duty claims against the defendants, Travis, Tanner, Crawford, and Rigdon.  The defendants argue in their supporting memorandum that Tyson's requests for declaratory and injunctive relief regarding the contraband policies also should be dismissed in light of *Overton* and Tyson's failure to disprove the validity of the prison regulations at issue.

As discussed thoroughly above, the Court has nothing before it to link the policies with a legitimate governmental purpose as required by *Overton* and *Turner*.  Tyson, under a broad reading, has alleged in his complaint that this policy as applied to him does not meet the purpose of keeping contraband out of the prison, since the "contraband" at issue was medication given to him.  He argues that neither the urine testing nor denial of contact visitation is related to the disciplinary issue for which he was charged.  In the context of this motion to dismiss, this is sufficient to challenge the

validity of the policy under the *Turner* standards discussed above and in *Overton*. This portion of the defendants' motion should be denied.

### F. Dismissal of Remaining State Law Claims

The defendants further argue that, to the extent Tyson asserts state law claims arising from the visitation policy, his claims should also be dismissed. According to the defendants, Louisiana law also affords great deference to the administrative decisions of the prison officials in implementing restrictions on visitation for the purpose of preventing exchange of contraband between inmates and their visitors, citing *State v. Pitts*, 263 La. 38, 41, 267 So. 2d 186, 187 (La. 1972).

While the prison officials do have authority to implement restrictive visitation, the issue presented to this court is whether the imposition of restrictive visitation was proper when imposed against Tyson without a hearing or due process, and under the particular facts of this case. Tyson continues to argue that his medication did not constitute the type of contraband sought to be restricted by these laws and regulations.

The Court again finds this sufficient to challenge the state law on the same basis as that of the federal law, whether the law as applied meets a legitimate governmental purpose under *Turner*. Therefore, the Court finds that the motion seeking dismissal of the plaintiffs state law claims on these grounds should be denied. The Court should allow the state law claims to proceed at this time under its supplemental jurisdiction.

### V. Recommendation

It is therefore **RECOMMENDED** that the defendants' **Motion for Partial Dismissal (Rec. Doc. No. 44)** be **GRANTED in part and DENIED in part** in the following manner:

The Motion should be **GRANTED in part** as to Tyson's § 1983 claims against defendants Stalder and Travis, each in his official capacity, and these claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

The Motion should be **GRANTED in part** as to Tyson's state law claims against Stalder and LeBlanc, each in their individual capacity, and these claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

The Motion should be **GRANTED in part** as Tyson's § 1983 claims for monetary damages arising out of the imposition of the contraband policy and related restrictions placed on his visitation against the defendants, Travis, Tanner, Crawford, and Rigdon, each in his individual capacity, because the defendants are entitled to qualified immunity, and these claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

The Motion should be **DENIED in part** to the extent the motion sought dismissal of Tyson § 1983 claims for declaratory and injunctive relief related to the validity of the contraband policy which led to the imposition of restrictions on his visitation and mandatory urine testing at his expense after his disciplinary conviction for possession of contraband drugs urged against LeBlanc, Tanner, Crawford, and Rigdon, each in his official capacity, as well as the related state law claims urged against the defendants Travis, Tanner, Crawford, and Rigdon.

Upon acceptance of the recommendations herein, remaining before the Court should be Tyson's § 1983 claims seeking declaratory and injunctive relief against the defendants, LeBlanc,

Tanner, Crawford, and Rigdon, each in his official capacity, related to the application of, and challenge to the constitutionality of, La. Rev. Stat. Ann. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C), as well as the state law claims of breach of duty against the defendants, Travis, Tanner, Crawford, and Rigdon.  These claims should **REMAIN REFERRED** to the undersigned magistrate judge pursuant to the Court's automatic referral rules.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this 6th day of May, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.