UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTONIO TYSON | CIVIL ACTION |
| VERSUS | NO. 08-4445 |
| ROBERT C. TANNER-WARDEN, JEFFERY TRAVIS-EX WARDEN, JAMES LEBLANC-SECRETARY, RICHARD STALDER-EX SECRETARY, TIM CRAWFORD-MAJOR, WADE RIGDON-CAPTAIN | SECTION "I"(4) |

## PARTIAL REPORT AND RECOMMENDATION

The plaintiff, Antonio Tyson, filed this **Motion for Partial Summary Judgment (Rec. Doc. No. 46)** seeking summary declaratory judgment in his favor and against the defendants on the following issues: (1) Louisiana Department of Corrections' Regulations #B-05-003 and C-02-008 and Policies #54.1 (N) and #25 at the B.B. "Sixty" Rayburn Correctional Center ("RCC") are unconstitutional in violation of the due process clauses of the United States and Louisiana constitutions; (2) the imposition of non-contact visitation for possession of his hypertension medication violated the due process clauses of the United States and Louisiana constitutions; (3) the institution of restitution for drug testing related to possession of his hypertension medication violates the due process clauses of the United States and Louisiana constitutions; (4) the defendants are not entitled to qualified immunity in their individual capacities; (5) the defendants are not entitled to

Eleventh Amendment immunity for violation of his state created rights; and (6) he is entitled to pursue his claims because his failure to exhaust was caused by the defendants' failure to provide notice and timely assistance.

The defendants oppose the motion stating that Tyson has failed to meet his burden of proof under Fed. R. Civ. P. 56 and that he is not entitled to judgment as a matter of law. The defendants also provide a list of contested issues of fact which would prevent granting of a summary judgment.

This motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. The Court has determined that the motion can be resolved without an evidentiary hearing.

**I.  Factual Background**

    **A.  The Complaint and Amended Complaint**

The plaintiff, Antonio Tyson ("Tyson"), is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[1] He filed the captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner, former Warden Jeffrey Travis, Major Tim Crawford, Captain Wade Rigdon, Louisiana Department of Corrections Secretary James LeBlanc, and former Secretary Richard Stalder, alleging due process and equal protections violations under the Fourth and Fourteenth Amendment of the

---

[1]Rec. Doc. No. 1.

U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.[2]

The plaintiff alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of a violating a prison regulation prohibiting him from the unauthorized possession of his medication, catapress. After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10 days in an isolation cell with a loss of 60 days of good-time credits. He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford. After the incident, on December 6, 2007, he was sentenced to 20 days in an isolation cell. Captain Rigdon also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six months. In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days in an isolation cell, with non-contact visitation and restitution for drug testing for another six months imposed by Captain Rigdon. The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson argues that the restitution and non-contact visitation are not authorized punishments under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug tests.[3] He

---

[2]Rec. Doc. Nos. 1,6.

[3]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.
D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.
E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and

3

also alleges that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials. He also claims that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

As relief, Tyson seeks judgment declaring that RCC's policy of requiring restitution for drug tests and non-contact visitation as additional disciplinary sentences violates Louisiana law and the Due Process clause. He also seeks declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses. He seeks to enjoin RCC and DOC from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws. He also request that he be awarded $5,000 in compensatory damages, the return of money paid in restitution, $10,000 in punitive damages, costs, appointment of counsel, and certification of a class.

Contemporaneous with the filing of the complaint, Tyson submitted an Amended Complaint in which he added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr.,

---

savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.
F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.
G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.
H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.
I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary measures upon an offender as a result of his actions.

4

as a defendant. He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[4] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of the prison officials wrongful action where prison officials fail to provide the inmate with notice of his administrative appeal rights. He also claims that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

Tyson further alleges that the prison administrative process denies him the ability to seek redress in state and federal courts if he fails to timely pursue prison administrative remedies and review. Under a broad reading of the amended complaint, he suggests that he was not advised of the administrative appellate process by RCC officials and was therefore deprived of his appellate rights and judicial review.

Tyson also alleges that he filed a grievance complaint with the prison officials about these matters. He claims that, on September 6, 2008, the Warden's office erroneously rejected the grievance. He now seeks declaratory and injunctive relief with respect to the imposition of restitution and non-contact visitation and monetary damages.

**B.     The *Spears* Hearing**

Tyson testified that he has been incarcerated for 17 years. Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress, the medicine he is prescribed to take for high blood pressure. He indicated that, on each occasion,

---

[4]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

he was taken before the disciplinary board and given a sentence in isolation and/or a loss of good-time credits.

He complains further that, in addition to the sentence imposed by the disciplinary board, the prison officials also impose a separate policy which caused him to lose his contact visits and required him to pay $10 a month for urine tests. He states that this policy violates Louisiana law and did not apply to him. He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test. He claims that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied. He also indicated that he filed suit in East Baton Rouge Parish, as required by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation. This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs. He indicated that the guards would pass out the medication three times a day but they do not watch him take it. Sometimes, he would not take it right away. He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365. He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as warden. He conceded that he was not aware whether Tanner or Travis had personal

knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as defendants because, as DOC secretaries, they are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

## II. **Procedural Background**

On August 31, 2009, based on the recommendations of the undersigned, the Court ordered the following dispositive actions: (1) the Court dismissed without prejudice Tyson's state and federal claims against the State of Louisiana, through Attorney General Foti, as frivolous and for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e for lack of jurisdiction under the Eleventh Amendment immunity doctrine; (2) the Court dismissed without prejudice Tyson's claims against the defendants, Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, for which he sought monetary damages against each in his official capacity, as frivolous and for failure to state a claim for which relief can be granted pursuant § 1915, § 1915A, and § 1997e, for lack of jurisdiction under the Eleventh Amendment immunity doctrine; and (3) the Court dismissed with prejudice Tyson's § 1983 claims against Stalder and LeBlanc, each in his individual capacity, be dismissed as frivolous and for failure to state a claim for which relief can be granted pursuant § 1915, § 1915A, and § 1997e.

The undersigned thereafter issued another Partial Report and Recommendation recommending that the defendants' Motion for Partial Dismissal (Rec. Doc. No. 44) be granted in part and denied in part in the following manner: (1) the Motion should be granted in part as to Tyson's § 1983 claims against defendants Stalder and Travis, each in his official capacity, and these claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (2) the Motion should be granted in part as to Tyson's state law claims against Stalder and LeBlanc, each in their individual capacity, and these claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (3) the Motion should be granted in part as to Tyson's § 1983 claims for monetary damages arising out of the imposition of the contraband policy and related restrictions placed on his visitation against the defendants, Travis, Tanner, Crawford, and Rigdon, each in his individual capacity, because the defendants are entitled to qualified immunity, and that these claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and (4) the Motion should be denied in part to the extent the motion sought dismissal of Tyson § 1983 claims for declaratory and injunctive relief related to the validity of the contraband policy which led to the imposition of restrictions on his visitation and mandatory urine testing at his expense after his disciplinary conviction for possession of contraband drugs urged against LeBlanc, Tanner, Crawford, and Rigdon, each in his official capacity, as well as the related state law claims urged against the defendants Travis, Tanner, Crawford, and Rigdon.

By Supplemental and Amended Partial Report and Recommendation, the undersigned recommended that the Motion be granted in part as to Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis,

Tanner, Crawford, and Rigdon, each in their official capacity, and that these claims be dismissed without prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) because the Court lacks jurisdiction under the Eleventh Amendment. Further, it was recommended that the Motion be denied in part as to the Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis, Tanner, Crawford, and Rigdon, each in their individual capacity.

The undersigned has also issued a Partial Report and Recommendation recommending denial of Tyson's Motion Summary Judgment (Rec. Doc. No. 54) and that Tyson's § 1983 claims that the defendants failed to advise him of his appellate rights and failed to appoint counsel to assist him and his § 1983 claims challenging the constitutionality of La. Rev. Stat. Ann. § 15:1186(b)(2)(a) be dismissed *sua sponte* as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1915e.

At the time of this writing, the Partial Report and Recommendation (Rec. Doc. No. 101), the Supplemental and Amended Report and Recommendation (Rec. Doc. No. 106), and the Partial Report and Recommendation addressing Rec. Doc. No. 54 remained pending before the District Judge. Upon acceptance of the recommendations therein, remaining before the Court would be Tyson's § 1983 claims seeking declaratory and injunctive relief against the defendants, LeBlanc, Tanner, Crawford, and Rigdon, each in his official capacity, related to the application of, and challenge to the constitutionality of, La. Rev. Stat. Ann. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C) and Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis, Tanner, Crawford, and Rigdon, each in their individual capacity.

**III.     Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp*, 477 U.S. at 324 (quoting

Fed.R.Civ.P. 56(e)). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

## IV. Plaintiff's Motion for Summary Judgment

Under a broad reading of his motion, as supplemented in the record,[5] Tyson seeks a partial judgment declaring the following: (1) Louisiana Department of Corrections' Regulations #B-05-003 and C-02-008 and Policies #54.1 (N) and #25 at the B.B. "Sixty" Rayburn Correctional Center ("RCC") are unconstitutional in violation of the due process clauses of the United States and Louisiana constitutions; (2) the imposition of non-contact visitation for possession of his hypertension medication violated the due process clauses of the United States and Louisiana constitutions; (3) the institution of restitution for drug testing related to possession of his hypertension medication violates the due process clauses of the United States and Louisiana constitutions; (4) the defendants are not entitled to qualified immunity in their individual capacities; (5) the defendants are not entitled to Eleventh Amendment immunity for violation of his state created rights; and (6) he is entitled to pursue his claims because his failure to exhaust was caused by the defendants' failure to provide notice and timely assistance.

Tyson alleges that restitution, or payment for the cost of drug testing, was imposed against him contrary to La. Rev. Stat. Ann. 15 :875(C)(1), because it was imposed even though none of his drug tests were positive. He also alleges that the restitution was imposed administratively several days after his disciplinary hearing and was done without notice or a hearing. He further argues that restitution is only to be imposed for possession of illicit drugs not prescribed medication. He also

---

[5]Tyson filed supplemental argument and exhibits which have been considered herein as part of the motion for summary judgment. Rec. Doc. Nos. 50, 65, 73, 104, and 109.

11

contends that there was no evidence that he possessed contraband as defined by the posted rules and policies at RCC.

Tyson further alleged that the imposition of non-contact visitation on him violates the constitution because it has no reasonable relationship to any legitimate penological goal. He also claims that there was no basis for the board to find guilt on a contraband violation. He also alleges that he had no notice of a prison rule that would define Catapress as a contraband and therefore should not have been sanctioned. He claims that he was not provided with copies of the policies prior to having penalties imposed against him. He also argues that the State rules and procedures for adult prisoners allows visitation restrictions only where the violation is related to visitation, which does not apply to his situation. He also claims that DOC regulation #C-02-008 and RCC policy #25 have not been adopted pursuant to La. Rev. Stat. Ann. § 49:951, *et seq*. to be enforceable under La. Rev. Stat. Ann. § 15:875(D) and (I).

Tyson further alleges that the defendants should not be entitled to qualified immunity because they are presumed to be aware of the laws governing their conduct. He also argues that they are not entitled to Eleventh Amendment immunity for violation of his state law created rights. Under a broad reading, Tyson alleges that he has was not notified of his appeal rights as required under state law and was denied access to legal materials and assistance as required under state law to appeal the sanctions imposed against him. This, he claims, caused him to default on his right to review of his administrative grievances.

## V.     Defendants' Opposition

The defendants contend that Tyson's motion should be denied for failure to adequately support it and for failure to meet his burden of proving the unconstitutionality of the challenged regulations and policies. The defendants further argue that Tyson seeks summary judgment on issues that are not part of the instant lawsuit. Specifically, the defendants argue that Tyson has not included a direct challenge to his contraband convictions in his original or amended complaints. Furthermore, any such claims would be barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), because favorable resolution of that claim would undermine the disciplinary conviction and sentence.

The defendants further argue that this court lacks jurisdiction to consider Tyson's claims under state law, because the Court lacks jurisdiction to consider violations of state law by state actors in their official capacities. The defendants also reiterate their opposition to Tyson's other motion for summary judgment on the basis that *Overton v. Bazzetta*, 539 U.S. 126 (2003), renders the non-contact visitation policy at RCC to be constitutional. Therefore, they claim Tyson is not entitled to any relief.

The defendants also point out that, based on Tyson's own exhibits, Regulation B-05-003 was not applied to him. Thus, he has failed to show that the regulation was unconstitutional on its face, or that it was applied in an unconstitutional manner to him.

## VI.    Analysis

Tyson's documentary submissions purportedly show that restitution was in fact imposed against him several days after his disciplinary hearing, without another hearing or notice. The same incomplete and limited records relied on by Tyson seem to reflect that the disciplinary board found

13

him guilty of possession of contraband, his catapress medication. Tyson refers to the underlying regulations and policies as "posted policies," yet he argues that he was given no notice that he was bound by these regulations and policies.

Nevertheless, as noted by the defendants, Tyson failed to seek leave of court to file his supplementary documents in support of his motion. Notwithstanding this defect, the Court finds that there are still genuine issues of material fact which prevent the granting of summary judgment at this time. Tyson has not established by appropriate summary judgment evidence that the various regulations and policies he addresses are unconstitutional or that they were unconstitutionally applied to him. This is no more than conclusory argument on his part.

In addition, the issues of qualified immunity, Eleventh Amendment immunity, and the viability of his challenge to the non-contact visitation policy, have been addressed in his prior motions. These arguments, and the defendants' opposition by necessity, are repetitive and warrant no further comment by the undersigned. Tyson's arguments and supporting documentation do not establish as a matter of fact or law that the challenged regulations, policies, or actions by the remaining defendants warrant summary judgment at this time.

## VII.   Recommendation

It is therefore **RECOMMENDED** that Tyson's **Motion for Partial Summary Judgment (Rec. Doc. No. 46)** be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this 19th day of May, 2010.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[6]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.