UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTONIO TYSON | CIVIL ACTION |
| VERSUS | NO. 08-4445 |
| ROBERT C. TANNER-WARDEN, JEFFERY TRAVIS-EX WARDEN, JAMES LEBLANC-SECRETARY, RICHARD STALDER-EX SECRETARY, TIM CRAWFORD-MAJOR, WADE RIGDON-CAPTAIN | SECTION "I"(4) |

## PARTIAL REPORT AND RECOMMENDATION

The plaintiff, Antonio Tyson, filed this **Motion for Summary Judgment (Rec. Doc. No. 54)** against seeking judgment in his favor against the defendants on the following issues: (1) the unconstitutionality of La. Rev. Stat. Ann. § 15:1172(C) as applied to him; (2) the unconstitutional forfeiture of his appellate rights in violation of due process and his right to access to the courts; and (3) the unconstitutionality of La. Rev. Stat. Ann. § 15:1186(B)(2)(a). The Court did not order a response from the defendants to this *ex parte* motion.

This motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. The Court has determined that the motion can be resolved without an evidentiary hearing.

## I.    Factual Background

### A.    The Complaint and Amended Complaint

The plaintiff, Antonio Tyson ("Tyson"), is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[1] He filed the captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner, former Warden Jeffrey Travis, Major Tim Crawford, Captain Wade Rigdon, Louisiana Department of Corrections Secretary James LeBlanc, and former Secretary Richard Stalder, alleging due process and equal protections violations under the Fourth and Fourteenth Amendment of the U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.[2]

The plaintiff alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of a violating a prison regulation prohibiting him from the unauthorized possession his medication, catapress. After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10 days in an isolation cell with a loss of 60 days of good-time credits. He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford. After the incident, on December 6, 2007, he was sentenced to 20 days in an isolation cell. Captain Rigdon also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six months. In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days in an

---

[1]Rec. Doc. No. 1.

[2]Rec. Doc. Nos. 1, 6.

isolation cell, with non-contact visitation and restitution for drug testing for another six months imposed by Captain Rigdon. The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson argues that the restitution and non-contact visitation are not authorized punishments under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug tests.[3] He also alleges that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials. He also claims that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

As relief, Tyson seeks judgment declaring that RCC's policy of requiring restitution for drug tests and non-contact visitation as additional disciplinary sentences violates Louisiana law and the

---

[3]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.
D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.
E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.
F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.
G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.
H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.
I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary measures upon an offender as a result of his actions.

3

Due Process clause. He also seeks declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses. He seeks to enjoin RCC and DOC from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws. He also request that he be awarded $5,000 in compensatory damages, the return of money paid in restitution, $10,000 in punitive damages, costs, appointment of counsel, and certification of a class.

Contemporaneous with the filing of the complaint, Tyson submitted an Amended Complaint in which he added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr., as a defendant. He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[4] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of the prison officials wrongful action where prison officials fail to provide the inmate with notice of his administrative appeal rights. He also claims that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

Tyson further alleges that the prison administrative process denies him the ability to seek redress in state and federal courts if he fails to timely pursue prison administrative remedies and review. Under a broad reading of the amended complaint, he suggests that he was not advised of the administrative appellate process by RCC officials and was therefore deprived of his appellate rights and judicial review.

---

[4]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

Tyson also alleges that he filed a grievance complaint with the prison officials about these matters. He claims that, on September 6, 2008, the Warden's office erroneously rejected the grievance. He now seeks declaratory and injunctive relief with respect to the imposition of restitution and non-contact visitation and monetary damages.

B.      **The *Spears* Hearing**

Tyson testified that he has been incarcerated for 17 years. Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress, the medicine he is prescribed to take for high blood pressure. He indicated that, on each occasion, he was taken before the disciplinary board and given a sentence of isolation and/or a loss of good-time credits.

He complains further that, in addition to the sentence imposed by the disciplinary board, the prison officials also impose a separate policy which caused him to lose his contact visits and required him to pay $10 a month for urine tests. He states that this policy violates Louisiana law and did not apply to him. He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test. He claims that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied. He also indicated that he filed suit in East Baton Rouge Parish, as required by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation. This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs. He indicated that the guards would pass

5

out the medication three times a day but they do not watch him take it. Sometimes, he would not take it right away. He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365. He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as warden. He conceded that he was not aware whether Tanner or Travis had personal knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as defendants because, as DOC secretaries, they are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

## II.     Procedural Background

On August 31, 2009, based on the recommendations of the undersigned, the Court ordered the following dispositive actions: (1) the Court dismissed without prejudice Tyson's state and federal claims against the State of Louisiana, through Attorney General Foti, as frivolous and for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e for lack of jurisdiction under the Eleventh Amendment immunity doctrine; (2)

the Court dismissed without prejudice Tyson's claims against the defendants, Travis, Tanner, Crawford, Rigdon, Stalder, and LeBlanc, for which he sought monetary damages against each in his official capacity, as frivolous and for failure to state a claim for which relief can be granted pursuant § 1915, § 1915A, and § 1997e, for lack of jurisdiction under the Eleventh Amendment immunity doctrine; and (3) the Court dismissed with prejudice Tyson's § 1983 claims against Stalder and LeBlanc, each in his individual capacity, be dismissed as frivolous and for failure to state a claim for which relief can be granted pursuant § 1915, § 1915A, and § 1997e.

The undersigned thereafter issued another Partial Report and Recommendation recommending that the defendants' Motion for Partial Dismissal (Rec. Doc. No. 44) be granted in part and denied in part in the following manner: (1) the Motion should be granted in part as to Tyson's § 1983 claims against defendants Stalder and Travis, each in his official capacity, and these claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (2) the Motion should be granted in part as to Tyson's state law claims against Stalder and LeBlanc, each in their individual capacity, and these claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (3) the Motion should be granted in part as to Tyson's § 1983 claims for monetary damages arising out of the imposition of the contraband policy and related restrictions placed on his visitation against the defendants, Travis, Tanner, Crawford, and Rigdon, each in his individual capacity, because the defendants are entitled to qualified immunity, and that these claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and (4) the Motion should be denied in part to the extent the motion sought dismissal of Tyson § 1983 claims for declaratory and injunctive relief related to the

7

validity of the contraband policy which led to the imposition of restrictions on his visitation and mandatory urine testing at his expense after his disciplinary conviction for possession of contraband drugs urged against LeBlanc, Tanner, Crawford, and Rigdon, each in his official capacity, as well as the related state law claims urged against the defendants Travis, Tanner, Crawford, and Rigdon.

By Supplemental and Amended Partial Report and Recommendation, the undersigned recommended that the Motion be granted in part as to Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis, Tanner, Crawford, and Rigdon, each in their official capacity, and that these claims be dismissed without prejudice for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) because the Court lacks jurisdiction under the Eleventh Amendment. Further, it was recommended that the Motion be denied in part as to the Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis, Tanner, Crawford, and Rigdon, each in their individual capacity.

At the time of this writing, the Partial Report and Recommendation (Rec. Doc. No. 101) and the Supplemental and Amended Report and Recommendation (Rec. Doc. No. 106) remained pending before the District Judge. Upon acceptance of the recommendations therein, remaining before the Court would be Tyson's § 1983 claims seeking declaratory and injunctive relief against the defendants, LeBlanc, Tanner, Crawford, and Rigdon, each in his official capacity, related to the application of, and challenge to the constitutionality of, La. Rev. Stat. Ann. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C) and Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis, Tanner, Crawford, and Rigdon, each in their individual capacity.

8

## III. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id*. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

IV. **Plaintiff's Motion for Summary Judgment**

Under a broad reading of his motion, as supplemented in the record,[5] Tyson seeks a partial judgment in his favor against the defendants on the following issues: (1) the unconstitutionality of La. Rev. Stat. Ann. § 15:1172(C) as applied to him; (2) the unconstitutional forfeiture of his appellate rights in violation of due process and his right to access to the courts; and (3) the unconstitutionality of La. Rev. Stat. Ann. § 15:1186(B)(2)(a). In support of these claims, he also argues that he was not informed of his procedural rights by any prison disciplinary board, and as a result, has lost the ability to challenge the loss of his good time credits.

Tyson further argues that the provisions in La. Admin. Code § 22:349(A)(1)-(8) and (B)(1)-(8) were violated when he requested the assistance of inmate counsel and his request was denied. He further alleges that he and inmate Richard Lay were disciplined because Lay assisted Tyson with the preparation of his pleadings for the court. The defendants refused to appoint or provide him with other inmate counsel assistance.

A. **Constitutionality of La. Rev. Stat. Ann. § 15:1172(C) and Forfeiture of Appellate Rights**

La. Rev. Stat. Ann. § 15:1172(C) provides that "[i]f an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with

---

[5]Tyson filed supplemental argument and exhibits which have been considered herein as part of the motion for summary judgment. Rec. Doc. Nos. 63, 78, 79.

prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice." This provision is part of Louisiana's Corrections Administrative Remedy Procedure ("CARP"), codified at La. Rev. Stat. Ann. § 15:1171-1179.

CARP was originally enacted in Louisiana in 1985 in response to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j (1980) and has been modified with changes in that area of the law. In general, CARP authorizes the Louisiana Department of Corrections ("DOC"), or a parish sheriff, to adopt an administrative remedy procedure for receiving, hearing, and disposing of complaints and grievances by prisoners against the state, the DOC, or its employees. La. Rev. Stat. Ann. § 15:1171(B). This includes any complaint or grievance "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." La. Rev. Stat. Ann. § 15:1184 (A)(1)(a).

The prisoner also is required to file his grievance within 90 days of the delictual action which caused him injury or damage or within whatever other deadlines the DOC may set for non-delictual claims. La. Rev. Stat. Ann. § 15:1172(B)(1)-(3). If the offender fails to timely initiate or pursue his administrative remedies within the deadlines established, the claim is abandoned and any subsequent suit shall be dismissed with prejudice. La. Rev. Stat. Ann. § 15:1172(C).

Under a broad reading, Tyson seems to concede that he had knowledge of the grievance process referenced above. By this fact alone, he has not shown that any defendant prevented him from exercising the appellate rights already within his knowledge. He argues, however, that he was not told about his appellate rights by the disciplinary board. He also claims that he was denied physical access to the law library and was therefore precluded from challenging the disciplinary

11

decision. This, he complains, resulted in an involuntary forfeiture of the good-time credits, in addition to the other sanctions imposed against him, monthly drug testing and restricted visitation. Consequently, he argues that the statute was effectively unconstitutional as applied, because he was not provided with the opportunity to exercise his rights thereunder.

Tyson first complains that the defendants did not advise him of his appellate rights at or after the disciplinary hearing in accordance with state law. He is not entitled to judgment as a matter of law. It is well settled that violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983. *See Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir. 1995); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Sylvester v. Cain*, 311 F. App'x 733, 735 (5th Cir. 2009). For these reasons, Tyson's motion for summary judgment must be denied as a matter of law on the § 1983 claim that the defendants failed to advise him of his appellate rights as a matter of law. Having resolved that this § 1983 claim is legally baseless, his claim should be dismissed *sua sponte* as frivolous and otherwise for failure to state a claim for which relief can be granted.[6]

---

[6]Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint. Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint. Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

To the extent he raises a denial of access to the library or courts claim under § 1983, Tyson has not provided the Court with any documentation to support summary judgment in his favor. Furthermore, the record contains nothing to show findings from a prison disciplinary board which resulted in the forfeiture good-time credits. No such documentation is attached to the motion or related pleadings.

Additionally, Tyson does not allege that he lost the good-time credits without a hearing or due process. He complains only that he was not advised of his right to appeal and was not provided with assistance or materials to exercise that right. Tyson also has not satisfactorily established as a matter of law that these statutes would be unconstitutional simply because he allegedly did not receive notice and/or was not able to exercise his appellate rights thereunder. Thus, he has not established that he is necessarily entitled to judgment as a matter of law.

Furthermore, while Tyson has submitted a myriad of documents in support of his motion, none of the documents clearly indicate whether the defendants provided notice of appeal rights to Tyson, in the written disciplinary decision or in some other form. In addition, while Tyson complains that he requested access to legal materials and assistance, he fails to provide a description of the materials he requested, to whom the request was made, when the request was made, or who denied the request. As a result of the foregoing, the Court finds that there remain genuine issues of material fact which prevent the granting of summary judgment.

### B.  Constitutionality of La. Rev. Stat. Ann. § 15:1186(B)(2)(a)

The other challenged provision is La. Rev. Stat. Ann. § 15:1186(B)(2)(a), which stays pauper prisoner cases filed in state courts until full payment of the filing fee as part of the Louisiana Prison Litigation Reform Act ("LPLRA"), codified at La. Rev. Stat. Ann. § 15:1181-1191. Here, Tyson

complains that the mandatory stay will indefinitely postpone his challenge to the forfeiture of his good-time credits solely on his inablity to pay the filing fee. He claims that the statute is overbroad and exceeds its purpose of controlling meritless prisoner litigation.

Tyson's argument must fail as a matter of law. The very provision now challenged by Tyson has been found to be constitutional by the federal courts in Louisiana. *See Clifford v. Louisiana*, No. 08-30757, 2009 WL 2870156, at *2 (5th Cir. Sept. 8, 2009); *Newson v. Alford*, No. 09-6595, 2009 WL 4799146, at *1, *3 (E.D. La. Dec. 4, 2009); *Hamilton v. Attorney Gen. of La.*, No. 07-3600, 2008 WL 1836670, at *6-9 (E.D. La. Apr. 23, 2008); *Mahogany v. La. R.S. 15:1186(A)(2)*, No. 07-1280, 2007 WL 1851941, at *4 (E.D. La. Jun. 27, 2007) (Barbier, J.) (Order adopting Report and Recommendation), *aff'd*, 262 F. App'x 636, 2008 WL 217764, at *1 (5th Cir. Jan. 25, 2008) (Table, Text in Westlaw), *cert. denied*, 129 S. Ct. 53 (2008). These federal courts' have specifically held that the automatic stay under La. Rev. Stat. Ann. § 15:1186(b)(2)(a) is constitutional. "[T]he mere fact that a law is arguably draconian does not mean that it is unconstitutional." *Mahogany*, 2007 WL 1851941, at *4. Tyson, however, should be well aware of this resolution since his prior challenge to the same statutory provision was dismissed as frivolous by this Court for the same reasons in *Tyson v. Tanner*, No. 10-132, 2010 WL 1552679, at *2 (E.D. La. Feb. 3, 2010). For these reasons, not only should Tyson's motion for summary judgment be denied on this issue as a matter of law, but his claim challenging the constitutionality of that provision should be dismissed *sua sponte* as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. § 1997e(c).

### C. Violation La. Admin. Code § 22:349(A)(1)-(8) and (B)(1)-(8)

Finally, in this motion, Tyson seeks summary judgment on the basis that the defendants violated La. Admin. Code § 22:349(A)(1)-(8) and (B)(1)-(8) when they failed to provide him with assistance of inmate counsel.

As noted above, violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983. *See Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir. 1995); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Sylvester v. Cain*, 311 F. App'x 733, 735 (5th Cir. 2009). For these reasons, Tyson's motion for summary judgment should be denied as a matter of law on the § 1983 claim that the defendants failed to advise him of his appellate rights as a matter of law. Having resolved that this § 1983 claim is legally baseless, his claim should be dismissed *sua sponte* as frivolous and otherwise for failure to state a claim for which relief can be granted.

### V. Recommendation

It is therefore **RECOMMENDED** that Tyson's **Motion Summary Judgment (Rec. Doc. No. 54)** be **DENIED**.

It is further **RECOMMENDED** that Tyson's § 1983 claims that the defendants failed to advise him of his appellate rights, his § 1983 claims challenging the constitutionality of La. Rev. Stat. Ann. § 15:1186(b)(2)(a), and his § 1983 claim that the defendants failed to advise him of his appellate rights be dismissed *sua sponte* as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1915e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 19th day of May, 2010.

	**KAREN WELLS ROBY**
	**UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.