UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTONIO TYSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4445** |
| **ROBERT C. TANNER-WARDEN, JEFFREY TRAVIS-EX WARDEN, JAMES LEBLANC-SECRETARY, RICHARD STALDER-EX SECRETARY, TIM CRAWFORD-MAJOR, WADE RIGDON-CAPTAIN** | **SECTION "I"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

Before the Court is the plaintiff Antonio Tyson's **Motion to Reconsider (Rec. Doc. No. 157)** which was referred to the undersigned for disposition. Though his motion is mostly nonsensical, Tyson "moves this Court to reconsider the unconstitutionality of La. R.S. 15:1186.A(2) and B(2)(a) as applied to § 1983 actions filed in state courts seeking declaratory, injunctive and monetary relief."[1]

### I. Factual Background

#### A. The Complaint and Amended Complaint

The plaintiff, Antonio Tyson ("Tyson"), is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[2] He filed the captioned *pro se* and *in forma*

---

[1] Rec. Doc. No. 157, p. 1.

[2] Rec. Doc. No. 1.

*pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner, former Warden Jeffrey Travis, Major Tim Crawford, Captain Wade Rigdon, Louisiana Department of Corrections Secretary James LeBlanc, and former Secretary Richard Stalder, alleging due process and equal protections violations under the Fourth and Fourteenth Amendment of the U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.[3]

The plaintiff alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of a violating a prison regulation prohibiting him from the unauthorized possession his medication, catapress. After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10 days in an isolation cell with a loss of 60 days of good-time credits. He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford. After the incident, on December 6, 2007, he was sentenced to 20 days in an isolation cell. Captain Rigdon also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six months. In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days in an isolation cell, with non-contact visitation and restitution for drug testing for another six months imposed by Captain Rigdon. The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson argues that the restitution and non-contact visitation are not authorized punishments under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug tests.[4] He

---

[3]Rec. Doc. Nos. 1,6.

[4]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.
D. The determination of restitution by the department shall be by disciplinary proceeding in

also alleges that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials. He also claims that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

As relief, Tyson seeks judgment declaring that RCC's policy of requiring restitution for negative drug test and non-contact visitation as additional disciplinary sentences violates Louisiana law and the Due Process clause. He also seeks declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses. He seeks to enjoin RCC and DOC from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws. He also request that he be awarded $5,000 in compensatory damages, the return of money paid in restitution, $10,000 in punitive damages, costs, appointment of counsel, and certification of a class.

---

accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.
E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.
F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.
G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.
H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.
I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary measures upon an offender as a result of his actions.

Contemporaneous with the filing of the complaint, Tyson submitted an Amended Complaint which added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr., as a defendant. He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[5] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of the prison officials wrongful action where prison officials fail to provide the inmate with notice of his administrative appeal rights. He also claims that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

Tyson further alleges that the prison administrative process denies him the ability to seek redress in state and federal courts if he fails to timely pursue prison administrative remedies and review. Under a broad reading of the amended complaint, he suggests that he was not advised of the administrative appellate process by RCC officials and was therefore deprived of his appellate rights and judicial review.

Tyson also alleges that he filed a grievance complaint with the prison officials about these matters. He claims that, on September 6, 2008, the Warden's office erroneously rejected the grievance. He now seeks declaratory and injunctive relief with respect to the imposition of restitution and non-contact visitation and monetary damages.

---

[5]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

### B. The *Spears* Hearing

Tyson testified that he has been incarcerated for 17 years. Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress, the medicine he is prescribed to take for high blood pressure. He indicated that, on each occasion, he was taken before the disciplinary board and given a sentence in isolation and/or a loss of good-time credits.

He complains further that, in addition to the sentence imposed by the disciplinary board, the prison officials also impose a separate policy which caused him to lose his contact visits and required him to pay $10 a month for urine tests. He states that this policy violates Louisiana law and did not apply to him. He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test. He claims that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied. He also indicated that he filed suit in East Baton Rouge Parish, as required by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation. This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs. He indicated that the guards would pass out the medication three times a day but they do not watch him take it. Sometimes, he would not take it right away. He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365. He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as warden. He conceded that he was not aware whether Tanner or Travis had personal knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as defendants because, as DOC secretaries, they are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

Remaining before the Court are Tyson's § 1983 claims seeking declaratory and injunctive relief against the defendants, LeBlanc, Tanner, Crawford, and Rigdon, each in his official capacity, related to the application of, and challenge to the constitutionality of, La. Rev. Stat. Ann. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C) and Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and his breach of duty claims against Travis, Tanner, Crawford, and Rigdon, each in their individual capacity.

**II.     Analysis**

Under a broad reading, Tyson has invoked this Court to reconsider the unconstitutionality of a Louisiana statute as applied in case brought under 42 U.S.C. § 1983 cases in the state courts. Tyson's motion is without merit and must be denied for the following reasons.

First, this Court has never ruled on the issue Tyson seeks to have "reconsidered." The application of a state statute in the Louisiana state courts is not and never has been an issue before this Court.

Second, Tyson does not indicate the basis for this Court's review of such a ruling. The Fifth Circuit has held that a motion to reconsider a judgment filed within ten days after entry of judgment, is to be treated as a motion to alter or amend under Fed. R. Civ. P. 59(e) and if filed after ten days, the motion is held to the more stringent standards of a Fed. R. Civ. P. 60(b) motion for relief from judgment. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990). This Court did not enter any such judgments or orders within ten days of the filing of Tyson's motion. In fact, Tyson fails to identify any judgment or order of this Court to be reconsidered.

Even if the motion is considered under the parameters of Fed. R. Civ. P. 60(b) as a motion filed outside of the ten day window, *see* Fed. R. Civ. P. 60(c), Tyson has failed to assert any ground thereunder for this Court to address. Fed. R. Civ. P. 60 (b) sets forth the specific requirements to be met for relief from a judgment as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

The burden of establishing at least one of these reasons is on the moving party, and the determination of whether that burden has been met rests within the discretion of the court. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173-74 (5th Cir. 1990); *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1314 (S.D. Tex.1994). Although Rule 60(b) speaks in terms of judgment, courts use the same standard when reconsidering pre-trial non-dispositive motions. *Tomlinson v. Allstate Indem. Co.*, 2007 WL 430642 (E.D. La. Feb. 5, 2007).

In *Edward H. Bohlin Co. v. The Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993), the Fifth Circuit recognized several factors to be considered when addressing a Rule 60(b) motion: (1) final judgments should not lightly be disturbed; (2) the rule is not to be used as a substitute for appeal; (3) the rule should be liberally construed in order to do substantial justice; (4) the timeliness of the motion; (5) whether the interest in deciding the case on the merits outweighs the interest in finality of the judgment and there is merit in the movant's claims; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factor relevant to the justice of the judgment under attack. *Edward H. Bohlin Co.*, 6 F.3d at 356. To that end, Rule 60(b) "must be equitably and liberally applied to achieve substantial justice." *Blois*, 612 at 938; *see also*, *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965).

As noted above, Tyson has not identified any judgment of this court addressing the issue he presents. In fact, no such judgment or order has been issued by this Court. There is no interest of justice compelled by considering Tyson's motion to review a judgment that does not exist.

The disposition of a motion under Fed. R. Civ. P. 60(b) is left to the sound discretion of the trial court. *Garcia v. Woman's Hospital of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996). Having reviewed Tyson's motion, the Court can find no basis for relief or merit in his request.

### III.   Recommendation

It is therefore **RECOMMENDED** that Tyson's **Motion to Reconsider (Rec. Doc. No. 157)** be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this 4th day of November, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.