UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTONIO TYSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4445** |
| **ROBERT C. TANNER-WARDEN, JEFFREY TRAVIS-EX WARDEN, JAMES LEBLANC-SECRETARY, RICHARD STALDER-EX SECRETARY, TIM CRAWFORD-MAJOR, WADE RIGDON-CAPTAIN** | **SECTION "I"(4)** |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

Before the Court is the **Motion to Reconsider (Rec. Doc. No. 157)** and the **Amended Motion to Reconsider (Rec. Doc. No. 212)** filed by the plaintiff, Antonio Tyson ("Tyson"). The Motion to Reconsider was referred back to the undersigned Magistrate Judge, pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**, for consideration of the motion as one seeking to amend the complaint to add new claims.[1] Tyson has since filed the amended motion which also is considered herein.

In the motion as amended, although both are mostly nonsensical, Tyson "moves this Court to reconsider the unconstitutionality of La. R.S. 15:1186.A(2) and B(2)(a) as applied to § 1983 actions filed in state courts seeking declaratory, injunctive and monetary relief."[2] The Court did not

---

[1]Rec. Doc. No. 210.

[2]Rec. Doc. No. 157, p. 1.

order a response from the defendants to these *ex parte* motions. The Court has determined that the motions can be resolved without an evidentiary hearing.

I.     **Factual Background**

   A.     **The Complaint**

Tyson filed the captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Rayburn Correctional Center ("RCC") Warden Robert C. Tanner, former Warden Jeffrey Travis, Major Tim Crawford, Captain Wade Rigdon, Louisiana Department of Corrections Secretary James LeBlanc, and former Secretary Richard Stalder, alleging due process and equal protections violations under the Fourth and Fourteenth Amendment of the U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.[3]

The plaintiff alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of violating a prison regulation prohibiting him from the unauthorized possession of his medication, catapress.  After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10  days in an isolation cell with a loss of 60 days of good-time credits.  He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford.

After the incident, on December 6, 2007, he was sentenced to 20 days in an isolation cell. Captain Rigdon also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six months.  In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days in an isolation cell, with non-contact visitation and restitution for drug testing

---

[3]Rec. Doc. Nos. 1, 6.

for another six months imposed by Captain Rigdon.  The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson also argued that the restitution and non-contact visitation were not authorized punishments under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug tests.[4]  He also alleged in the complaint and the amended complaint that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials pursuant to La. Rev. Stat. Ann. § 15:1186(A)(2) and (b)(2)(a).  He also claimed that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

---

[4]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.
D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.
E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.
F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.
G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.
H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.
I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary measures upon an offender as a result of his actions.

As relief, Tyson also sought judgment declaring that RCC's policy of requiring restitution for negative drug test and non-contact visitation as additional disciplinary sentences violates Louisiana law and the Due Process clause. He also sought declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses and to enjoin RCC and DOC from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws. He also requested an award $5,000 in compensatory damages, the return of money paid in restitution, $10,000 in punitive damages, costs, appointment of counsel, and certification of a class.

**B.     The Amended Complaint**

Contemporaneous with the filing of the Complaint, Tyson submitted an Amended Complaint which added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr., as a defendant. He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[5] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of a prison official's wrongful action where the prison official fails to provide the inmate with notice of his administrative appeal rights. He also claimed that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

Tyson further alleged that the prison administrative process denies him the ability to seek redress in state and federal courts if he fails to timely pursue prison administrative remedies and review.

---

[5]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

Tyson also alleged that he filed a grievance complaint with the prison officials about these matters. He claimed that, on September 6, 2008, the Warden's office erroneously rejected the grievance. He sought declaratory and injunctive relief with respect to the imposition of restitution and non-contact visitation and monetary damages.

### C.    The *Spears* Hearing

Tyson further clarified his claims at the *Spears* Hearing[6] held on November 3, 2008.[7] Tyson testified at the hearing that, at the time, he had been incarcerated for 17 years. Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress, the medicine he is prescribed to take for high blood pressure. He indicated that, on each occasion, he was taken before the disciplinary board and given a sentence in isolation and/or a loss of good-time credits.

He complained further that, in addition to the sentence imposed by the disciplinary board, the prison officials also imposed a separate policy which caused him to lose his contact visits and required him to pay $10 a month for urine tests. He stated that this policy violates Louisiana law and did not apply to him. He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test. He claimed that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied. He also indicated that he filed suit in East Baton Rouge Parish, as required

---

[6]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[7]Rec. Doc. No. 14. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation. This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs. He indicated that the guards would pass out the medication three times a day but they do not watch him take it. Sometimes, he would not take it right away. He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365. He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as warden. He conceded that he was not aware whether Tanner or Travis had personal knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as defendants because, as DOC secretaries, they are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

## II.     Relevant Procedural Background

As outlined above, under a broad reading of the complaint and amended complaint, Tyson argued that he was denied his right to appeal the disciplinary actions, because of the unconstitutionality of Louisiana's pauper statute at La. Rev. Stat. Ann. § 15:1186(A)(2) and (b)(2)(a). He revisited this claim with more specificity in his Motion for Summary Judgment (Rec. Doc. No. 54), in which he also argued *inter alia* that this statute was unconstitutional. Tyson complained that the mandatory stay provision at § 15:1186(B)(2)(a) indefinitely postponed his challenge to the forfeiture of his good-time credits solely on his inability to pay the filing fee. He also claimed that the statute was overly broad and exceeded its purpose of controlling meritless prisoner litigation.

This Court resolved that Tyson's argument failed as a matter of law, in light of the fact that Louisiana's statute had been found to be constitutional by the federal courts after considering similar arguments by other Louisiana prisoners, citing the following cases: *Clifford v. Louisiana*, No. 08-30757, 2009 WL 2870156, at *2 (5th Cir. Sept. 8, 2009); *Newson v. Alford*, No. 09-6595, 2009 WL 4799146, at *1, *3 (E.D. La. Dec. 4, 2009); *Hamilton v. Attorney Gen. of La.*, No. 07-3600, 2008 WL 1836670, at *6-9 (E.D. La. Apr. 23, 2008); *Mahogany v. La. R.S. 15:1186(A)(2)*, No. 07-1280, 2007 WL 1851941, at *4 (E.D. La. Jun. 27, 2007) (Barbier, J.) (Order adopting Report and Recommendation), *aff'd*, 262 F. App'x 636, 2008 WL 217764, at *1 (5th Cir. Jan. 25, 2008) (Table, Text in Westlaw), *cert. denied*, 129 S. Ct. 53 (2008). Because of this finding, the Court also recommended that Tyson's claim that La. Rev. Stat. Ann. § 15:1186 was unconstitutional be *sua sponte* dismissed as frivolous and otherwise for failure to state a claim for which relief could be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e(c).

Tyson filed an objection to the overall report, but he made no specific objection to the findings related to the constitutionality of La. Rev. Stat. Ann. § 15:1186.  The report and the recommendation, and others not relevant to the instant motion, were adopted by the District Judge on June 9, 2010.[8]

### III. Tyson's Motion to Amend the Complaint

In construing Tyson's current motion as one seeking leave to amend his complaint as directed, he requests this Court to reinstate his original claim that La. Rev. Stat. Ann. § 15:1186 is unconstitutional in that the stay provision therein indefinitely prevented him from pursuing review of his administrative grievance proceedings and claims against the named defendants in the state courts.

#### A. Standards of Review for a Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings.  It provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  This, and other federal rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v Gibson*, 355 U.S. 41, 48 (1957).

Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so.  *See Jacobsen v Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). However, leave to amend is by no means automatic.  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981).

---

[8]Rec. Doc. No. 131.

The decision to grant or deny a motion for leave to amend lies within the sound discretion of the Trial Court. *Addington*, 650 F.2d at 666.

In exercising its discretion, the Trial Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). Leave to amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend. *Zenith Radio Corp. v. Hazeltime Research, Inc.*, 401 U.S. 321 (1971).

**B.     Analysis**

In light of the foregoing procedural history, the Court finds that Tyson's request to amend his complaint is in bad faith and is otherwise futile.  The request is made in bad faith on the basis that the claims have already been dismissed from this litigation as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915, 1915A and 42 U.S.C. § 1997e(c).[9]  To rehash the frivolous claim would also be futile as the claim still is meritless for the reasons addressed in the Court's original dismissal order.  The presentation of this same meritless claim would also present undue prejudice to the defendants, who would be called upon again to defend against a frivolous claim.

A further showing of bad faith, and futility, comes from the fact that, as Tyson has already been informed, La. Rev. Stat. Ann. § 15:1186 has been found constitutional, including its stay provision as applied to prisoners like Tyson. *See Clifford v. Louisiana*, No. 08-30757, 2009 WL

---

[9]Rec. Doc. No. 131.

2870156, at *2 (5th Cir. Sept. 8, 2009) and other cases cited above and relief upon in this Court's prior rulings.

Tyson has also raised this same claim against Warden Tanner and Secretary LeBlanc in another division of this Court. *See* Civ. Action No. 10-132"A"(2) (E.D. La.). Notably, that civil action was filed after this Court dismissed the same claims from the instant action.

In the later case, Tyson claimed, *inter alia*, that he filed a civil action against Tanner, LeBlanc, and the various prison disciplinary boards in the 22nd Judicial District Court of Louisiana on January 22, 2009. He alleged that the state court granted him pauper status, but pursuant to La. Rev. Stat. Ann. § 15:1186(B)(2), the court stayed the proceedings until all court costs and fees were paid. He sought a ruling, as he does here, that the statute was unconstitutional in that it denied him due process and appellate review.

In that case, the Magistrate Judge recommended that the claim be dismissed as frivolous after finding that Tyson had not named a proper defendant with respect to the claim and "more importantly," because the federal courts have repeatedly held that § 15:1186(B)(2) is constitutional.[10] The District Judge adopted that report and the recommendation on April 15, 2010, and Tyson's claim, *inter alia*, was dismissed as frivolous.[11] The Court's ruling was affirmed on appeal by the United States Fifth Circuit Court of Appeal. *Tyson v. Tanner*, No. 10-30421, 2010 WL 4272621, at *1 (5th Cir. Oct. 29, 2010).

In the instant case, Tyson seeks yet another opportunity to present this Court with a claim that twice has been resolved against him as frivolous. The claim has been dismissed, and there is

---

[10]Civ. Action No. 10-132"A"(2), Rec. Doc. No. 4; *Tyson v. Tanner*, No. 10CV132, 2010 WL 1552679, at *2 (E.D. La. Feb. 3, 2010) (Report and Recommendation).

[11]Civ. Action No. 10-132"A"(2), Rec. Doc. Nos. 19, 20.

no basis presented to warrant its resurrection. To allow him to do so would violate the terms, and the spirit, of Fed. R. Civ. P. 15. For the foregoing reasons, Tyson has failed to establish his entitlement to amend his complaint to include a claim that La. Rev. Stat. Ann. § 15:1186 is unconstitutional.

## IV.     Recommendation

It is therefore **RECOMMENDED** that Tyson's **Motion to Reconsider (Rec. Doc. No. 157)** and the **Amended Motion to Reconsider (Rec. Doc. No. 210)** be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[12]

New Orleans, Louisiana, this 24th day of February, 2011.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[12] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.