UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTONIO TYSON | CIVIL ACTION |
| VERSUS | NO. 08-4445 |
| ROBERT C. TANNER-WARDEN, ET AL. | SECTION "I"(4) |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion for Summary Judgment (Rec. Doc. No. 173)** filed by the remaining defendants, Warden Robert Tanner, former Warden Jeffrey Travis, Major Tim Crawford, and Captain Wade Rigdon, seeking summary judgment dismissing Tyson's remaining claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). The motion was referred to the undersigned Magistrate Judge for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**. The plaintiff, Antonio Tyson, opposes the motion arguing that the defense is untimely raised, and that administrative remedies were effectively unavailable to him as a result of the actions of the prison officials.

**I.     Factual Background**

    **A.     The Complaint**

Tyson filed the above captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, B.B. "Sixty" Rayburn Correctional Center ("RCC") Warden Robert C. Tanner, former Warden Jeffrey Travis, Major Tim Crawford, Captain Wade Rigdon,

Louisiana Department of Corrections Secretary James LeBlanc, and former Secretary Richard Stalder, alleging due process and equal protection violations under the Fourth and Fourteenth Amendment of the U.S. Constitution and violations of the Louisiana Constitution as a result of the disciplinary policies and proceedings against him at RCC.[1]

The plaintiff alleges that, on March 14, 2007, July 23, 2007, December 6, 2007, and March 5, 2008, he was found guilty of violating a prison regulation prohibiting him from the unauthorized possession his medication, catapress, which he takes for his high blood pressure. After the first two incidents, on March 14 and July 23, 2007, he was sentenced each time to serve 10 days in an isolation cell with a loss of 60 days of good-time credits. He was also administratively placed on non-contact visitation and ordered to pay restitution for drug testing for six months pursuant to the order of Major Crawford.

After the incident on December 6, 2007, he was sentenced to 20 days in an isolation cell. Captain Rigdon also placed him on non-contact visitation and ordered him to pay restitution for drug testing for six months. In connection with the March 5, 2008, disciplinary conviction, he was sentenced to 30 days in an isolation cell, with non-contact visitation and restitution for drug testing for another six months imposed by Captain Rigdon. The last two disciplinary sentences were imposed by Captain Rigdon.

Tyson also argued that the restitution and non-contact visitation were not authorized punishments under La. Rev. Stat. Ann. § 15:875(C)(1), especially where he has had no positive drug

---

[1] Rec. Doc. Nos. 1, 6.

tests.[2] He also alleged in the complaint and the amended complaint that he was denied his right to appeal the disciplinary actions because he never received notice of that right from the prison officials pursuant to La. Rev. Stat. Ann. § 15:1186(A)(2) and (b)(2)(a). He also claimed that the disciplinary sentences were imposed without a fair hearing or finding of guilt as provided for in the prison rules.

As relief, Tyson also sought judgment declaring that RCC's policy of requiring restitution for negative drug tests and non-contact visitation as additional disciplinary sentences violates Louisiana law and the Due Process clause. He also sought declaratory judgment that the denial of notice of his disciplinary appeal rights violated the Due Process and Equal Protection clauses and

---

[2]La. Rev. Stat. Ann. § 15:875 provides as follows in relevant part (footnote omitted):
C.(1) Restitution may be obtained by corrections services from an offender for the cost of drug testing when the results of the test are positive.
(2) The amount of restitution shall be for the actual cost of the drug testing.
D. The determination of restitution by the department shall be by disciplinary proceeding in accordance with the rules and regulations of the department. The department may promulgate and adopt, in accordance with the Administrative Procedure Act, specific rules and regulations governing the determination of restitution. The department shall not obtain restitution from an offender who appeals the findings of a determination proceeding until after the exhaustion of his remedies. The department shall render a report every calendar year to the division of administration detailing the amount withdrawn from each drawing or savings account, the purpose for which each withdrawal was made and the recipient, if any, of any funds so withdrawn for the payment of any expenses, other than to the department.
E. The amount of restitution may be obtained from an offender by freezing assets in his drawing and savings account and prohibiting withdrawals therefrom until the restitution is paid, whether from these accounts or from any other source by any other appropriate means. The accounts may be frozen regardless of the source of the assets contained therein and specifically including any assets of a juvenile sent to him by his parent or guardian and placed in his accounts. This Subsection shall not prohibit the withdrawal of funds for the purpose of payments under the Crime Victims Reparations Act, court costs as authorized by law, and other withdrawals specifically authorized by the warden or by the superintendent if the warden is unavailable, in that order.
F. The restitution collected from an offender under this Section shall be used to defray the expenses of his property damage or destruction, including repairing or replacing stolen property either not recovered or damaged, his medical expenses, his escape or attempted escape, or his drug testing.
G. Any offender who is transferred to another facility within or discharged from the department shall remain liable for any restitution authorized under this Section.
H. "Offender" means an adult or juvenile offender committed to the Department of Public Safety and Corrections at the time the property damage or destruction was sustained, or the medical expenses or escape costs were incurred.
I. This Section shall not be construed to prohibit or limit the imposition of any other disciplinary measures upon an offender as a result of his actions.

to enjoin RCC and the Department of Corrections ("DOC") from seeking restitution and enforcing non-contact visitation against him in violation of these state and federal laws. He also requested that an award of $5,000 in compensatory damages, the return of money paid in restitution, $10,000 in punitive damages, costs, appointment of counsel, and certification of a class.

### B.     The Amended Complaint

Contemporaneous with the filing of the complaint, Tyson submitted an Amended Complaint which added the State of Louisiana, through Louisiana Attorney General Charles C. Foti, Jr., as a defendant. He also alleged that La. Rev. Stat. Ann. § 15:1172(C)[3] violates the Louisiana Constitution because it bars an inmate from seeking judicial review of the prison officials' wrongful action where prison officials fail to provide the inmate with notice of his administrative appeal rights. He also claimed that prison officials act outside of their authority by failing to provide mandatory legal assistance in civil and criminal disciplinary matters and prohibit assistance from other inmates during disciplinary matters.

Tyson further alleged that the prison administrative process denied him the ability to seek redress in state and federal courts if he fails to timely pursue prison administrative remedies and review.

Tyson also alleged that he filed a grievance complaint with the prison officials about these matters. He claimed that, on September 6, 2008, the Warden's office erroneously rejected the grievance. He sought declaratory and injunctive relief with respect to the imposition of restitution and non-contact visitation and monetary damages.

---

[3]This provision reads as follows: "C. If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in Subsection B of this Section, his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice."

### C.      The *Spears* Hearing

Tyson further clarified his claims at the *Spears* Hearing[4] held on November 3, 2008.[5] Tyson testified at the hearing that, at the time, he had been incarcerated for 17 years. Tyson stated that he was written up around five times for possession of contraband when he was caught with one tablet of catapress. He indicated that, on each occasion, he was taken before the disciplinary board and given a sentence in isolation and/or a loss of good-time credits.

He complained further that, in addition to the sentence imposed by the disciplinary board, the prison officials also impose a separate policy which caused him to lose his contact visits and required him to pay $10 a month for urine tests. He stated that this policy violates Louisiana law and does not apply to him. He stated that the rule applies when an inmate is in possession of the contraband during visitation and has had a "dirty" urine test. He claimed that he had the medicine in his cell and never had a positive urine test in all the time he has been incarcerated.

Tyson further testified that he appealed the disciplinary sentence to the DOC Secretary and his appeal was denied. He also indicated that he filed suit in East Baton Rouge Parish, as required by Louisiana law, challenging the forfeiture of good-time and the imposition of non-contact visitation. This proceeding had not been resolved at the time of the hearing.

Tyson also stated that the disciplinary charges arose out of the fact that he was found to be in possession of his catapress in between medication runs. He indicated that the guards would pass out the medication three times a day but they do not watch him take it. Sometimes, he would not

---

[4]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[5]Rec. Doc. No. 14. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

take it right away. He also stated that a couple of guards would give him all three daily pills in one run because they did not want to make three runs a day.

Tyson stated that he sued Warden Tanner and Warden Travis because they were involved in the denial of his administrative remedy complaints, including ARP 206365. He also stated that the policy regarding loss of contact visitation and restitution were posted while Warden Travis was in charge and he was originally responsible for the unlawful policy, which passed on to Tanner when he took over as Warden. He conceded that he was not aware whether Tanner or Travis had personal knowledge of his complaints, although they were both policy-makers responsible for the posted policy at the prison and should have been aware of the facts from his ARP complaint.

He also claimed that he named Secretary LeBlanc and former Secretary Stalder as defendants because, as DOC secretaries, the are responsible for all matters at the DOC prisons and should know what is going on at each facility.

Finally, he testified that he named Crawford and Rigdon as defendants because they were the officers who wrongly applied the rule to him and actually notified him that he was subject to the loss of visitation and payment of restitution.

## II. **Claims Remaining for Disposition**

Considering the Court's prior dispositive orders, remaining before the Court are Tyson's § 1983 claims seeking declaratory and injunctive relief against the defendants, Tanner, Travis, Crawford, and Rigdon, each in his official capacity, related to the application of, and challenge to the constitutionality of, La. Rev. Stat. Ann. § 15:1172(C) and La. Rev. Stat. Ann. § 15:875(C) with regard to urinary testing and contact visitation restrictions applied to him as disciplinary sanctions, and Tyson's state law claims challenging the constitutionality of the restrictive visitation policy and

his breach of duty claims for failure to notify him of his appellate rights against Travis, Tanner, Crawford, and Rigdon each in their individual capacity.

### III.     Standard of Review for Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

## IV.  Analysis

### A.  The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") as codified at 42 U.S.C. § 1997e(a) requires that prisoners must properly exhaust "such administrative remedies as are available" prior to filing a § 1983 complaint related to prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Specifically, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). The State of Louisiana has a similar requirement before suit can be filed in the state courts. La. Rev. Stat. Ann. § 15:1184(A)(2).

Exhaustion under the PLRA is an affirmative defense and is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *see also*, *Jones v. Brock*, 549 U.S. 199, 216 (2007) (concluding that exhaustion under the PLRA is an affirmative defense). As a result, the trial court may resolve factual disputes concerning exhaustion without the participation of a jury. *Id*.

The court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." (citations and internal quotation marks omitted) *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). The Supreme Court has held that the exhaustion requirement mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Woodford*, 548 U.S. at 92-93. Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his "grievance remedy to conclusion," he has not exhausted "available remedies." *Id.*

When a prisoner fails to exhaust his administrative remedies prior to filing suit without a valid excuse, a court properly dismisses the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998).

### B.     Louisiana's Administrative Remedy Procedure

As also recognized in the defendants' motion, Louisiana has a two-step Administrative Remedy Procedure ("ARP") for inmates, which they are required to use before filing suit in district court. La. Rev. Stat. Ann. § 15:1172(E); La. Admin. Code tit. 22, § 325(A) (2009); *Dillon v. Rogers*, 596 F.3d 260, 265 (5th Cir. 2010) (recognizing and outlining Louisiana's ARP process). The procedure, as relevant to Tyson's case, provides that the inmate commences the first step of the grievance process by writing a letter ("grievance") to the warden of his or her institution briefly setting out the basis for his or her claim and the relief sought. La. Admin. Code tit. 22 § 325(G)(1)(a). The grievance letter must be written within 90 days of the alleged event. *Id.* The Warden thereafter has 40 days from the date the grievance is received to respond to it. *Id.*

The inmate may proceed to the second step of the ARP by appealing to the Secretary of the Louisiana Department of Corrections, ("DOC Secretary") if he or she is dissatisfied with the first step response from the Warden. La. Admin Code tit. 22 § 325(G)(2)(a). If the inmate does not receive a response to a first step grievance, then he is entitled to proceed to the second step of the process after the expiration of the first step 40-day response time-limit. La Admin. Code tit. 22 § 325(G)(4)(a). If the inmate is not satisfied with the second step response, he may then file suit in the appropriate district court. La. Admin Code tit. § 325(G)(2)(b).

### C. Tyson's Failure to Exhaust

#### 1. The Defense Was Raised Timely

Tyson first argues that the defendants have not properly raised the affirmative defense of exhaustion. He contends that it should have been raised immediately after he filed this civil action, and under a broad reading, since it was not raised previously, the defendants have waived the defense.

As noted above, the United States Supreme Court has made clear that the PLRA's exhaustion provision is an affirmative defense. *Dillon*, 596 F.3d at 272; *Jones*, 549 U.S. at 216. It is well settled that an affirmative defense, like exhaustion, may be raised in the initial pleading (answer or motion for summary judgment), by amendment, or in a pretrial order that supersedes the pleadings. *Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 95-96 (5th Cir. 1976); *see also*, *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004). In this case, the defendants raised exhaustion as an affirmative defense in their answer to Tyson's complaint and amended complaints.[6] The

---

[6] Rec. Doc. No. 166, p. 2.

affirmative defense was properly preserved. There is no merit to Tyson's claim of untimeliness or waiver of the defense.

### 2. Tyson's Claims Are Not Properly Exhausted

A review of the pleadings reflects that Tyson filed four relevant grievances to the RCC officials arguably related to the claims raised in this lawsuit. As will be shown, Tyson did not pursue these grievances through both steps of the grievance process such to exhaust the available administrative remedies before filing this civil action.

Tyson filed RCC-2008-365 in which he complains that "[t]he policy/practice of Rayburn Correctional Center in imposition of restitution for drug testing for persons found in possession of his own medication and not contraband . . . is unauthorized by La. R.S. 15:875.C.(1) . . . Additionally I was not notified of appellate rights by the disciplinary board(s) resulting in unconstitutional forfeiture . . ."[7] As relief, he asked for the return of his money paid for the drug testing and for the drug testing to stop. This grievance did not mention or challenge the restrictions on his contact visitation. This ARP was referenced in Tyson's original complaint as the grievance filed in reference to the claims raised in this civil action.[8]

According to the uncontested evidence presented by the defendants, and as acknowledged by Tyson, this grievance was rejected at the first step on September 6, 2008, with instructions for Tyson to address his claims through the disciplinary appeal process.[9] Tyson disagreed that this should be a disciplinary appeal, and he took no further action on this grievance.[10]

---

[7] Rec. Doc. No. 173-4, p. 2.

[8] Rec. Doc. No. 1, p. 2.

[9] Rec. Doc. No. 173-3, p. 13; Rec. Doc. No. 1, p. 2.

[10] *Id.*; Rec. Doc. Nos. 188, 189.

Tyson also filed three other grievances in which he challenged the prison's restrictions on his contact visitation as a result of his contraband charges. He filed RCC-2007-370 in which he complained that his visitation was restricted by the administration. Tyson withdrew this grievance on October 12, 2007, before a first step response was made. He took no further action in the ARP system in connection with this grievance.

Tyson also filed RCC-2008-84 in which he complained about his visitation restrictions.[11] This grievance was rejected on March 18, 2008, by the prison officials as untimely; that is, the grievance was not filed within 90-days of his placement on restricted visitation.[12] Tyson did not pursue further review of this grievance in the ARP system.

His third restricted visitation grievance was filed in RCC-2008-87.[13] This grievance was rejected on March 24, 2008, as repetitious of RCC-2008-84, which had been previously dismissed as untimely filed.[14] Tyson did not pursue further review of this grievance in the ARP system.

In his opposition memoranda, Tyson presents no evidence to dispute the factual assertions regarding his efforts to pursue grievances in the prison. These facts demonstrate that Tyson did not pursue both steps of the grievance procedure, *see* La. Admin. Code § 22:325(G)(4)(a), on any of the foregoing grievances at RCC. Exhaustion must be completed within the state system to allow the federal courts to take cognizance of the prisoner's claim. *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998). Tyson, therefore, did not exhaust available remedies before filing the instant suit.

---

[11]Rec. Doc. No. 173-3, p. 8.

[12]*Id*.

[13]Rec. Doc. No. 173-3, p. 9.

[14]*Id*.

Tyson also readily admits in his opposition memoranda that he did not pursue the disciplinary appeal recommended to him in the rejection of RCC 2008-365.[15] He instead simply chose not to pursue it.

In attempting to explain this away, Tyson suggests that the prison officials caused him to waive his disciplinary appeal rights. Under a broad reading, he seems to suggest that this somehow rendered him unable to exhaust the ARP system. An administrative remedy, however, does not become unavailable simply because a prisoner has not timely or properly filed a grievance, and is consequently later barred from seeking further administrative relief. *See Woodford*, 548 U.S. at 83-84. In addition, ignorance of the grievance rules does not excuse a prisoner's noncompliance. *Accord*, *Aguirre v. Dyer*, 233 Fed. Appx. 365, 366 (5th Cir. May 24, 2007) (holding that an inmate failed to exhaust where he failed to file a step-two grievance because his step one was referred to the Internal Affairs Division) (citing *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)). For these reasons, Tyson has not demonstrated any basis for this Court to excuse or overlook his failure to exhaust.

The record reflects that Tyson did not exhaust available state court remedies with respect to the claims remaining in this civil action. For the foregoing reasons, the defendants' motion for summary judgment should be granted and that Tyson's federal and state law claims be dismissed for failure to exhaust state court remedies as required by 42 U.S.C. § 1997e(a).

## V.     **Other Pending Motions**

A review of the record reveals that, as of this writing, Tyson has filed seven other motions pending before the Court that have been referred to the undersigned for disposition. Two of these

---

[15] Rec. Doc. Nos. 188, 189.

motions, Tyson's Motion to Reconsider (Rec. Doc. No. 157) and Tyson's Amended Motion to Reconsider (Rec. Doc. No. 212), are the subject of a Supplemental Report and Recommendation separately issued by the undersigned and awaiting final review by the District Judge. The motions remaining are as follows: (1) Motion for Counter-Defense (Rec. Doc. No. 167); (2) Motion for Summary Judgment (Rec. Doc. No. 175); (3) Motion to Compel (Rec. Doc. No. 184); (4) Motion to Rule on Class-Action Certification; and (5) Amended Motion for Summary Judgment (Rec. Doc. No. 187). The Court has reviewed each of these motions and finds that they either address the merits of Tyson's unexhausted claims or seek other non-dispositive pretrial relief to which he is not entitled in light of his failure to exhaust and the recommendation of dismissal herein. For these reasons, the motions should be summarily denied as moot.

## VI.     Recommendation

It is therefore **RECOMMENDED** that the **Motion for Summary Judgment (Rec. Doc. No. 173)** filed by the remaining defendants, Warden Robert Tanner, former Warden Jeffrey Travis, Major Tim Crawford, and Captain Wade Rigdon, be **GRANTED**, and Tyson's § 1983 and state law claims be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

It is further **RECOMMENDED** that Tyson's **Motion for Counter-Defense (Rec. Doc. No. 167)**, **Motion for Summary Judgment (Rec. Doc. No. 175)**, **Motion to Compel (Rec. Doc. No. 184)**, **Motion to Rule on Class-Action Certification (Rec. Doc. No. 186)**, and **Amended Motion for Summary Judgment (Rec. Doc. No. 187)** be **DENIED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[16]

New Orleans, Louisiana, this 24th day of February, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[16]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.